O. K. BROWN, ADM'R *vs.* TOWN OF SWANTON.

January Term, 1896.

Present: ROSS, C. J., TAFT, ROWELL, MUNSON, START and THOMPSON, JJ.

*Witness who has Searched Record—Evidence of Public Highway—Insufficiency and Notice of—Witness' Opinion—Rebuttal—Presumption from Failure to Call Witness.*

The fact that there is not in the town clerk's office a record of the laying of a certain highway, may be shown by any one who has searched and knows, as well as by the clerk himself.

That a road has been maintained by the town is evidence that it is a public highway.

One question being whether a culvert had become too small by the crowding together of its walls, through the action of frost, witnesses were properly allowed to state that they had examined it at various times during several years preceding the accident, and had noted a gradual contraction of the space, and also to state that the town had knowledge of this condition.

The plaintiff was properly allowed to show that during the year before the accident a selectman of the defendant was notified that the sluice was too small to carry off the water; inasmuch as there was evidence tending to show that the defect in the covering of the sluice was naturally caused by such insufficiency in size.

As tending to show that the town ought to have known of the condition, a witness was properly allowed to testify that in the spring of several years before the accident he had seen the water running on top of the sluice.

A witness having described the quantity of water and the size of the sluice, was allowed to state that the sluice was not half large enough to carry off the water. *Held*, that, whether or not the statement was admissible as opinion, it was only another way of expressing what the witness

had already stated as matter of fact, without objection, and its admission was not error.

The question being whether a certain trench was made by the water or by a man shoveling and leaving the dirt beside the trench, a witness who, in cross examination, had described the appearance of things was properly allowed to state, on re-direct examination, how far the dirt beside the ditch would go toward filling it.

The jury having viewed the sluice in April, 1895, a witness who had seen it then and also two years before, just after the accident, was properly allowed to state that it showed no substantial change.

The defendant gave evidence tending to show that the contraction of the walls had been caused by artificial means after the accident and shortly before the view taken by the jury. The plaintiff was, therefore, properly allowed to rebut this testimony by evidence, somewhat in detail, of measurements and comparisons, and was not necessarily to be confined to the general statement of witnesses that there had been no tampering with the walls.

The defendant having introduced witnesses who testified that they saw the deceased driving rapidly toward the place of the accident, it was not error to permit the plaintiff to show by witnesses who saw him when nearer thereto that he was then driving slowly.

To render the town liable it was not necessary that the precise defect which caused the accident should have been actually known to the town, or even that it should have existed so long that the town ought to have known of it, provided it resulted naturally from an insufficiency of which the town had ample notice.

There was some evidence in the circumstances of the accident that the deceased was in the exercise of ordinary care.

The court properly refused to instruct the jury that if the highway commissioner went over the road four days before the accident and saw no water running over the road and no sign that it had done so, the town was not negligent in failing to go over the road again.

Shortly before the accident an abutter upon the highway had told the commissioner that the sluice was frozen up, and the water running over the road and that he was likely to be damaged by the water setting into his cellar. *Held*, that the court properly refused to instruct the jury that this was no notice of any defect in the highway for purposes of travel.

Even if the town had no reason to expect that the stoppage of the water in the sluice would make the covering unsafe, yet if it did have that effect and the town failed in its duty to learn of and repair it within a reasonable time, it would be liable.

Both the mother and the wife of the deceased had personal knowledge upon a material question, but the plaintiff improved the wife, only, as a witness, although the mother was within call and able to attend. The defendant requested the court to instruct the jury that it was fair to infer from the failure to call the mother that the testimony of the wife was untrue. *Held*, that the instruction was properly refused.

ACTION ON THE CASE, under R. L. 2138 and 2139, for damages to wife and next of kin resulting from the death of the plaintiff's intestate from an injury alleged to have been received through an insufficiency in the defendant's highway. Plea, the general issue. Trial by jury at the April Term, 1895, Franklin County, *Tyler*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted.

*R. O. Sturtevant, E. A. Ayers, Ballard & Burleson* and *F. W. McGettrick* for the defendant.

The absence of a record of the highway should have been shown, if at all, by the town clerk. A layman cannot properly testify to the absence any more than to the existence of a record.

The plaintiff should not have been permitted to testify that the highway had been maintained by the town, for it was the same thing as stating his opinion upon a question which the jury was to determine. He should have been confined to distinct acts of the town. *Young* v. *Wheelock*, 18 Vt. 493; *Blodgett* v. *Royalton*, 14 Vt. 288: R. L. 3051–3074.

The testimony of the plaintiff that he, as selectman, about one year before the accident, had been notified by an abutter upon the highway that the sluice was too small and that the water was setting back into his cellar and likely to cause him damage, was inadmissible (a) as too remote, (b) as hearsay, (c) as having no tendency to show that the highway was insufficient for travel.

The testimony received in rebuttal of the defendant's claim that the sluice had been tampered with since the accident, was too extensive and minute. It should have been given in the opening. In rebuttal the plaintiff should have been limited to the experts' general statement of opinion that the sluice had not been interfered with.

The witness Brown should not have been permitted to state how far the dirt beside the trench would have gone towards filling it, for that was a matter of opinion.

A verdict for the defendant should have been directed. There was no evidence that the deceased was in the exercise of due care.

*D. G. Furman* and *H. A. Burt* for the plaintiff.

MUNSON, J.   The testimony of witnesses other than the town clerk was admissible to establish the fact that there was no record of the laying of the road. In *Hill* v. *Bellows*, 15 Vt. 727, where it is held that the certificate of the town clerk is not evidence that there is no record of a conveyance, it is said that legitimate proof of that fact would be the oath of the town clerk or of some one who had examined the records.

The fact that a road is a public highway may be established by evidence that the town has recognized it as such by expending highway money in its repair. *Page* v. *Weathersfield*, 13 Vt. 424. The testimony of O. K. Brown that this road had been maintained by the town was evidence tending to show that it was a public highway.

Plaintiff's intestate was injured by being thrown from his wagon while driving over a sluice, the top of which consisted of marble slabs covered with earth. Plaintiff claimed that this sluice was insufficient in size, and that the water had been retained until it had flowed across the road-bed. and made a gully in the earth which covered the slabs. The theory of the defense was that the excavation had been made in such a manner and at a period so recent that the town was not liable because of it.

It appeared that the sluice was built in 1878, that the side walls consisted of single courses of large sized cobble stones, and that as originally laid the space between the walls was about eighteen inches. The plaintiff claimed that the walls had not been relaid, and that the action of the frost from year to year had gradually crowded them together, until they were in some places but three inches apart. It was clearly competent for the plaintiff to support his evidence as to the situation of the stones at the time of

the accident, by showing a natural movement which would account for their being in the situation claimed. It was therefore proper to show by the witness Rood that he examined the sluice in 1892, and that the stones were then not more than six inches apart in some places; and by the witness Hislop that he examined the sluice five years before the accident, and the year after it, and several times between, and that he found the opening had contracted every time he looked from first to last.

In view of the relation which was claimed to exist between the previous condition of the sluice and the excavation which caused the accident, it was proper to show that the town had knowledge of this previous condition. It is true that notice is not necessary to make a town liable for an insufficiency which exists through its fault; but in this case it was clearly permissible to prove notice, to show that the town was in fault. This made admissible the testimony of O. K. Brown, that while acting as first selectman, about a year before the accident, he was told that the sluice was not sufficient to carry off the water in the spring. The possession of this knowledge would bear upon any claim that the injury to the covering of the sluice had occurred so recently that no liability attached. The town would be liable for a defect in the covering of the sluice, although too recent to have been known, if it was the natural and probable result of a previous condition as to which the town was in fault.

The plaintiff was also entitled to show that this contracted condition of the sluice had existed so long and produced such results that the town ought to have known of it, if it did not. To this end it was proper to show by Truman Mead, Jr., that he had seen the water run on top of the sluice several times at the spring season in different years prior to the accident.

The witness Rood, who built this sluice, testified without objection that if it had remained the size it was built it

would have been sufficient to carry off the water; and as above held, was properly permitted to testify that he examined it in 1892 and found the space narrowed in some places to six inches; and also testified without objection that he had noticed the water that had accumulated there, and that there was enough to float a boat most any time in the spring or fall—two or three feet deep. He was then asked under exception whether the sluice as it was when he examined it in 1892 was sufficient to carry off the water that accumulated there at any time, and replied that it was not more than half big enough. It is claimed that this inquiry was objectionable in that it called for the opinion of the witness upon a question of sufficiency. The question was fairly limited by its connection to the seasons of accumulation respecting which the witness had testified, and his testimony was in terms sufficiently general to cover all the years during which the trouble had existed. In view of this it may perhaps fairly be claimed that the question did not call for an opinion, but for a statement in another form of a fact to which the witness had already testified. However this may be, we think the answer as given was really no more than a statement that the sluice did not carry off half the water, and could have conveyed to the jury no impression beyond that given by his previous testimony received without objection. Harm cannot be predicated of an opinion which goes no further than what the witness has just presented of his own knowledge in the nature of actual demonstration.

Defendant claimed that Truman E. Mead dug the trench which caused the accident, and threw the dirt beside it. Mead testified that he found the gully there and the water running through it, and got out a few shovelfuls of earth at one end with the idea of lowering the channel and letting off the water, but that the difficulties were such that he abandoned the attempt. The witness Brown was particularly inquired of on cross examination as to the amount of this

dirt, with the evident purpose of claiming that the pile was sufficient to account for the excavation.    The witness was then permitted to state on re-direct how far the dirt would go towards filling the gully.    This fact was proper to meet the purpose of the cross examination, and the manner of proving it was not in violation of the rule respecting opinion evidence.    In the absence of proof of measurements of the pile and the excavation, no description of the two could enable the jury to determine whether the dirt was sufficient to fill the hole, and the judgment of the witness might properly be taken.

The jury having viewed the sluice as it was in April, 1895, and the witness Brown having seen it both at that time and in the spring of 1893, just after the accident, it was not error to permit him to state that its condition in April, 1895, was about the same as its condition at the time of the accident. It was proper to supplement the examination of the jury with direct evidence of the fact that the condition of the sluice remained unchanged.    It was not necessary that the jury be left to determine the fact solely by comparing what they had seen with the description given of its previous condition.    It is impracticable, and often impossible, to describe conditions so accurately and minutely as to negative the occurrence of a change with the same force that attaches to the statement of the observer.

The defendant claimed and introduced evidence tending to show that a year previous to the trial, and until shortly before the jury saw the sluice, its walls were regular and straight, and at least twelve inches apart at the narrowest point; and that they had been tampered with by some one not long before the jury was taken there.    To meet this evidence, the witnesses Clark and Mason were permitted to give in detail the results of an examination of the sluice made during the trial.    The evidence was objected to as not proper rebuttal; and it is now urged in support of the objection that their testimony should have been confined to

a statement that they had examined the sluice enough to determine whether it had been tampered with, and found that it had not. But we think the testimony might properly embrace such details as would be likely to satisfy the jury that the witnesses were not mistaken in regard to the main fact. The fact that such details would have been pertinent and important in the opening did not require their exclusion in rebuttal. We have not been furnished a copy of this testimony, and must dispose of the matter upon what is shown by the exceptions. It appears that the witnesses, after stating that they removed the dirt which covered the slabs and then took up the slabs, were permitted to describe the manner in which the stones of the side-walls were embedded in the earth, and to give a large number of measurements of the space between the side-walls, showing the irregular position of the stones. This clearly tended to disprove a part or all of the testimony of the defendant above stated. We cannot say that the details were more than might properly be received to give force to the testimony.

The defendant having introduced witnesses who testified that they saw the deceased as he was driving towards the place of the accident and that he was driving fast, it was not error to permit the plaintiff to show by Miss Butterfield, who lived at a point nearer the place of the accident and saw deceased as he was passing her house, that he was then driving slow.

We have not been furnished with the testimony of Friott referred to in the exceptions, and nothing is disclosed by the. exceptions themselves that enables us to pass upon the propriety of the testimony received in rebuttal of his statements.

The motion to direct a verdict for the defendant was properly overruled. The first ground alleged erroneously assumes that the plaintiff could not recover without showing that the town knew of the existence of the gully,

or showing that it had existed so long that the town ought to have known of it and repaired it.    The case presented was not that of an unforeseen defect arising without fault of the town.    The plaintiff's evidence tended to show that the insufficiency in the covering of the sluice was the direct and natural result of a defect in the sluice of which the town had long had knowledge.    This view disposes also of the second ground stated in the motion, as well as of the first request to charge relied upon in argument.

The claim that there was no affirmative proof that the deceased was in the exercise of ordinary care, was incorrect. The exceptions refer to the testimony of Truman E. Mead and Hattie Mead as bearing upon this point.    The testimony of Hattie Mead has not been furnished us, but that of Truman E. Mead certainly disclosed circumstances which pointed to the exercise of proper care.    The fact that the horse stopped with the hind wheels of the wagon but a few inches past the gully was evidence tending to show that the deceased was driving carefully.

The court properly refused to instruct the jury that if the highway commissioner went over the road four days before the accident, and saw no water running over the road and no sign of its having done so, the town was not negligent in failing to go over the road again before the time of the accident.    Looking at the case with reference to the washout alone, it was for the jury to say whether the town should have known of the defect under the circumstances.

Truman Mead testified that on the Monday before the accident he told the highway commissioner that the sluice was frozen up and the water running over the road, and that he was going to be damaged by the water backing into his cellar.    It was not error to refuse an instruction that this was not notice of any defect in the highway rendering it unsafe for travel.    The town could not claim immunity on the ground that its knowledge did not extend to the actual cutting of the gully.    This complaint, although made with

reference to private damage, informed the authorities of a condition of things which might be expected to result in an unsafe culvert; and, having regard to the gully alone, the question of its diligence was to be considered with reference to this information.

The defendant requested an instruction that if the jury found the sluice was sufficient for carrying away such water as would naturally and ordinarily run to it, and that its sufficiency was only impaired by its freezing up in the winter, the town could not be held responsible for such freezing, nor liable for the happening of the accident, unless the town officers, as reasonably careful and prudent men, had reason to expect that as a result of such freezing the road would be rendered insufficient and unsafe, and unless it was so rendered insufficient and unsafe. This request is defective in at least one respect. It is not true that if the town had no reason to expect that the stoppage of the water would render the road unsafe, it could not be liable for the accident. If the stoppage of the water did produce an insufficiency of the culvert which rendered it unsafe, it was the duty of the town to learn of the defect and repair it within a reasonable time, even though it may not have had reasonable cause to expect such a result. The fact that it had no reasonable cause to expect such a result would have its bearing upon the question of diligence when the defect was developed, but would not relieve it from the duty of prudent supervision and reasonable promptitude, nor from liability for any lack in this respect.

Mrs. Truman Mead, the mother, and Mrs. Ella Mead, the wife of the intestate, were riding together in another vehicle behind the intestate as he approached the place of the accident. The wife was produced as a witness to the occurrences of the evening, but Mrs. Truman Mead was not, although she was accessible and able to appear. The court was asked to instruct the jury that, in view of all the testimony, it was fair to infer from the failure to call Mrs.

Truman Mead that the testimony given by the plaintiff's other witnesses to matters concerning which Mrs. Truman Mead had knowledge, was untrue. The instruction was properly refused. The failure to call Mrs. Mead may have been a circumstance proper for the jury to consider, but if the defendant was entitled to any charge in regard to it, it certainly was not entitled to the charge asked. If it is ever fair to assume from the failure to produce one of two favorably disposed witnesses that the testimony given by the other is false, it must be in view of a variety of circumstances which it is the province of the jury to pass upon. A charge in the language of the request would have assumed that certain features of the testimony could be viewed only in one way.

*Judgment affirmed.*