DENNIS MAHONEY'S ADMR. *v.* RUTLAND RAILROAD COMPANY.

Special Term at Rutland, November, 1907.

Present: ROWELL, C. J., MUNSON, WATSON, JJ., and HASELTON, Sup. J.

Opinion filed May 8, 1908.

*Master and Servant—Injury to Servant—Incompetency of Fellow Servant—Sufficiency of Evidence—Pleading—Sufficiency of Allegations—Witnesses—Refreshing Memory—Transcript of Former Trial—Exceptions to Charge—Too General.*

It is not an impeachment of one's own witness to ask him on direct examination, for the purpose of refreshing his memory, whether

he had not given certain recited testimony on a former trial and which was different from what he had just testified to, where the witness answers that his recollection is refreshed by the inquiry, and that he now remembers the fact to be as he formerly testified.

A duly certified transcript of the official report of a witness's testimony in a former trial may be used to refresh his recollection in the subsequent trial, in the discretion of the court.

The fact that the writing then used to refresh the witness's memory was not made at or near the time of the transaction to which he testifies is no ground for denying its use, for such a writing will often be a safer reminder than an incomplete memorandum made soon after such transaction.

In an action against a railroad company for the death of a locomotive engineer resulting from the collision of a regular train with a train running on special orders, and alleged to have been caused by the incompetency of a telegraph operator who failed to report the departure of a train, his testimony that he knew there was a rule requiring him to report the departure of trains, but did not know that the rule required him to do it promptly, was evidence tending to show his incompetency.

In an action against a railroad company for the death of a locomotive engineer, an allegation that defendant negligently permitted an opposing engine to be upon the track without notifying decedent, and that he was ignorant of the negligence and danger, is sufficient as an allegation that decedent was ignorant of the incompetency of a telegraph operator, whose failure to report the departure of a train constituted the sole ground of recovery, since the operator's incompetency and his resulting failure to report, was an element of defendant's negligence.

For about a week before the accident, the telegraph operator had worked in defendant's freight office, about one-third of a mile from the passenger station at Burlington, and shortly before going there had worked for some weeks under a trainmaster in the yard office at Rutland. During this time decedent was engineer of a fast passenger train running between Rutland and Montreal. *Held*, that the jury might properly conclude from the nature and place of their respective duties that decedent was ignorant of the operator's incompetence.

Where defendant submitted twelve requests to charge, and excepted to the refusal of the court to charge as requested, and to

the charge as given on the subject-matter of the requests, the exception was too general to reserve anything for review.

CASE for negligence. Plea, the general issue. Trial by jury at the September Term, 1906, Rutland County, *Tyler*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. This case has been once before in the Supreme Court. See 78 Vt. 244 for a full statement of the facts.

*H. Henry Powers* and *P. M. Meldon* for the defendant.

It was error to allow plaintiff, on direct-examination of his own witness, to confront him with his testimony on the former trial. The record of this testimony merely reminded the witness of a declaration made by him at a former trial, inconsistent with the testimony just given by him, and therefore amounted to impeaching evidence. To be properly used to refresh the memory of a witness the writing must have been made at or about the time of the transaction in question. 2 Elliott on Ev. § 865; *Maxwell's Exrs.* v. *Wilkinson et al.*, 113 U. S. 656; *Nicholls* v. *Webb*, 8 Wheat. 326; *Ins. Co.* v. *Weide*, 9 Wall. 677; *Chaffee* v. *U. S.*, 18 Wall. 516; *Sandwell* v. *Sandwell*, Comb. 445; *Burrough* v. *Martin*, 2 Camp. 112; *Steinkeller* v. *Newton*, 9 Car. & P. 313; *Whitfield* v. *Aland*, 2 Car. & K. 1015; *Burton* v. *Plummer*, 2 Ad. & El. 341; *Wood* v. *Cooper*, 1 Car. & K. 645; *Morrison* v. *Chapin*, 97 Mass. 72; *Spring Garden Ins. Co.* v. *Evans*, 15 Md. 54; *Halsey* v. *Sinsebaugh*, 15 N. Y. 485; *Marcly* v. *Shults*, 29 N. Y. 346; *State* v. *Rawls*, 2 Nott & McCord 331; *O'Neall* v. *Walton*, 1 Rich. 234; *Putnam* v. *U. S.*, 162; *Com.* v. *Phelps*, 11 Gray, 73; *Velott* v. *Lewis*, 102 Pa. St. 326.

A verdict should have been directed for defendant, because there was evidence of the telegraph operator's incompetency. His failure to report the train was manifestly due to his negligence and being a fellow servant, that negligence cannot avail plaintiff. *Harvey* v. *N. Y. etc. R. R.*, 88 N. Y. 481; *Wright* v. *N. Y. etc. R. R.*, 25 N. Y. 562.

*Butler & Moloney* for the plaintiff.

Plaintiff is required to show only "facts from which it can be inferred that the servant was ignorant of the danger," and

in that connection it is to be remembered that decedent never had an opportunity to learn of the danger, and was under no obligation to discover it. *Dunbar* v. *R. R. Co.,* 79 Vt. 476.

The court, in its discretion, properly allowed the memory of plaintiff's witness to be refreshed by his testimony on the former trial, even though that was inconsistent with his testimony in this trial. 1 Wig. Ev. § 774.

Defendant's exception to the failure to charge as requested was too general to reserve anything for review. *Kiley* v. *Rut. R. R.,* 80 Vt. 536; *White* v. *Lumiere Co.,* 79 Vt. 223; *Luce* v. *Hassam,* 76 Vt. 450.

MUNSON, J. This case was first tried at the March Term in 1904, and is reported in 78 Vt. 244. The trial now under review was had at the September Term in 1906. On this trial the claim of defendant's negligence was based solely on the failure of Tynan, the telegraph operator at Burlington, to report the departure of the south bound train. It was not claimed that Tynan was more than a fellow servant of the deceased; and it was essential to the plaintiff's case to show that Tynan was not competent for the duties assigned him, and that the defendant was negligent in selecting him for that service. The particular incompetence complained of was ignorance of the duty of promptly reporting the departure of trains. Tynan had testified on the former trial, in substance, that as he understood the matter at the time he was not required to report the departure of trains until convenient unless a report was called for, and that he did not learn otherwise until after the hearing before the railroad commissioners. At the second trial he was called in the plaintiff's opening, and testified on plaintiff's inquiry, that he could not say whether he knew of the rule requiring a prompt report at the time of the accident or not. The examiner was then permitted, for the purpose of refreshing the recollection of the witness, to put inquiries which embodied questions and answers read from the transcript of the former trial and containing the testimony above stated; and upon this examination the witness finally testified as of his present recollection that the facts were as stated on the former trial.

This witness was asked at the opening of his examination how long he had been working at Burlington when the accident

occurred, and said in substance that he could give no idea how long he had been there because he did not remember. The examiner was then permitted to inquire, for the purpose of refreshing his recollection, if he was not asked on the former trial how long he had been there, and if he did not answer: "I think I commenced * * the morning after Christmas." The witness said. he testified so if it was- there, but that he could not give it as his present recollection. But later in his examination he said he could state from his present recollection that he had not been there more than a week. The exact time was entirely immaterial, and the answer given presents no question that requires a separate treatment.

It is objected that this method of examination simply presents to the jury a declaration of the witness made on a former occasion inconsistent with his statement made on the trial, and is therefore objectionable as an impeachment of the party's own witness, and also as the introduction of hearsay testimony. But this objection, whatever force and effect should be. given it when the examination fails of its purpose, is not pertinent when the examination results in a statement of the witness that his recollection is refreshed by the inquiry and that he now remembers the fact.

It is said further that the writing was not one that could be used to refresh the recollection of the witness because not made at or near the time of the transaction, and because not made by the witness, nor known by him to be correct at the time it was made. - It may be questioned whether the rules referred to are applicable to documents of this character. The writing used was a verbatim report of the witness' testimony. It was made by a sworn officer of the court under statutory provisions. It was part of a duly certified copy of the report of a former trial. The purpose of the report and transcript was to preserve the proceedings and evidence of the trial in a manner and form that would be authentic and certain. *Bridgman* v. *Corey's Est.*, 61 Vt. 1, 20 Atl. 273. The court ordinarily assumes the correctness of the reporter's minutes in determining questions that arise in the progress of the trial. The statute provides that a transcript of these minutes, duly authenticated, shall be received as evidence in all cases where the subject-matter would be admissible under the rules of evidence. If a witness dies or re-

moves from the State, the record of his testimony as contained in this transcript may be read to the jury in any subsequent trial. *Quinn* v. *Halbert,* 57 Vt. 178; *McGovern* v. *Hays,* 75 Vt. 104, 53 Atl. 326. It would seem from the uses made of this transcript that the witness himself might properly be permitted to rely upon it as a correct report of his utterances. See Wig. Ev. § 761.

It remains to consider the reliability. of the writing as affected by the time when the statement of the witness was made and recorded. It seems clear to us, notwithstanding the high authority cited by defendant's counsel in support of his position, that the want of contemporaneous origin is not an adequate ground for excluding a writing like this from the use in question. Such a writing will often be a safer reminder than an incomplete private memorandum made soon after a transaction to preserve the writer's recollection of what he saw of it or the part he took in it. It presents a statement made by the witness when summoned to the best effort of his recollection by the caution and obligation of an oath, when his attention was directed to the material facts by competent inquiries, and when his remembrance was tested and corrected by an examination in the interest of the party against whom he was called. If not his freshest recollection, it was such as he had when called upon by the law to give his recollection, and such that it was received by the court for use in the determination of the case. It is hardly consistent to say that a party may have the full benefit of the transcript on another trial if the witness dies or removes from the State, but cannot be allowed the use of it to refresh a weak or confused recollection.

The conflict upon this subject has centered mainly around the case of *Malhuish* v. *Collier,* 15 Q. B. 578, 19 L. J. Q. B. 493. The most extended review of the cases is that in *Putnam* v. *United States,* 162 U. S. 687, 16 Sup. Ct. 923, 40 Law. Ed. 1118, where inquiries of this character were held inadmissible, three of the judges dissenting. Mr. Justice White, the writer of the majority opinion, argues that the contrary view rests upon a mistaken construction of the English decision. But Mr. Wigmore thinks the mistaken construction is that presented in the *Putnam* case. § 761 n. It will be noticed from the above citation that there are two reports of *Malhuish* v. *Collier.* Justice

White quotes from the Queen's Bench report. Mr. Wigmore used the Law Journal report, as will be seen by referring to § 904. The statement of the purpose for which the evidence was admitted, and the expressions attributed to the judges who disposed of the case, differ materially in the two reports, and this may account for the conflicting claims regarding the decision.

According to the Law Journal report, the trial court ruled that the question might be put "for the purpose of refreshing the memory of the witness," while the Queen's Bench report states that the questions were permitted, "not to discredit but to remind the witness"; and the question hinges mainly upon the sense in which the judges used the word "remind" in passing upon the correctness of this ruling. It is said in *Putnam* v. *United States:* "The word 'remind,' used in *Malhuish* v. *Collier,* in its broadest sense, would certainly be susceptible of the interpretation of refreshing memory, and if it were to receive that construction the case would undoubtedly be authority for the proposition that one taken by surprise, by the testimony of his own witness, could refresh the memory of the witness by calling his attention to contradictory statements previously made by him, without reference to whether such statements were or were not contemporaneous, * *." The following extract from the opinion of Coleridge, J., as given in the Law Journal, seems clearly to indicate that the word was used in this sense: "A witness from flurry or forgetfulness may omit facts, and on being reminded may carry his recollection back so as to be able to give his evidence fully and correctly, and a question for that purpose may properly be put. But * * it is objected that the object of the question put here was to contradict and not to remind the witness, and that, therefore, it could not be put. It is certainly very difficult to draw the line of distinction in practice, and I am not now disposed to do it."

It is said, however, that the context and the reasoning of the opinions show that the word was not so used; that the judges were not considering the right of a party to refresh the memory of his witness, but his right to neutralize the testimony as given. It seems to be conceded that a party may be permitted to neutralize an unexpected answer of his witness, whatever the cause of the change, by questioning him as to contradictory statements

previously made. So, when the unexpected answer is due to a failure of memory, the examiner may question the forgetful witness regarding his previous testimony to neutralize his statement, but not to refresh his recollection. It seems unreasonable and unnecessary to restrict the remedy thus, and the practical difficulty of permitting one thing and precluding the other is apparent. The trial court, when called upon for its ruling, may attribute the attitude of the witness to forgetfulness or to hostility, but the fact cannot always be known until developed by the inquiry. A witness may be asked, for the purpose of neutralizing an unfavorable answer, if he did not testify in a certain way on a former trial. Suppose the witness answers that the question refreshes his recollection, and that he now remembers, not only that he so testified, but that the fact was as he then stated, and that he wishes to change his testimony accordingly;— would it be considered that this was improperly in the case and should be stricken out? If considered proper evidence when brought out by an inquiry put for another purpose why should the rules of evidence be such as to require the exclusion of like inquiries put for the purpose of securing the evidence?

A rule of law that would prevent the use of the transcript for this purpose in every case of a failure of memory, would occasionally work great injustice. The danger of a misuse of the privilege can hardly be such as to require the adoption of an inflexible rule of exclusion. We think the matter is one that may well be left to the discretion of the trial court. It is doubtless a matter in which discretion should be exercised with care. Questions based upon the transcript should not ordinarily be permitted until independent preliminary inquiries have been exhausted. Nor should the practice be such as to encourage the neglect of a proper previous preparation of the case. A further preliminary examination might well have been required in this instance, but the failure to require it was not legal error.

The defendant moved for a verdict on the ground that there was no evidence tending to show that Tynan was incompetent. Tynan's testimony that he knew there was a rule requiring him to report the departure of trains, but did not know the rule required him to do it promptly, was evidence tending to show his incompetency.

This motion was also based upon the ground that there was no allegation nor evidence that the deceased was ignorant of Tynan's incompetency. The incompetency and resulting failure of Tynan was an element of the negligence of the defendant in permitting an opposing engine to be upon the line without stopping the deceased, and the declaration alleges in substance that this negligence and danger were not known to the deceased. This is sufficient; for the ignorance alleged is coextensive with the matters which constitute the sole ground of recovery. If evidence of Mahoney's ignorance of Tynan's incompetency was necessary, it can be found in the circumstances disclosed. Tynan had worked for about a week prior to the accident in the freight office at Burlington, about one-third of a mile from the passenger station, and shortly before going to Burlington had worked for some weeks under the trainmaster in the Rutland yard-office. During this time Mahoney was the engineer of a fast passenger train running between Rutland and Montreal. The jury might properly conclude from the nature and place of their respective duties that Mahoney was ignorant of Tynan's incompetency.

The defendant submitted twelve requests to charge, and excepted to the refusal of the court to charge as requested, and to the charge as given upon the subject-matter of the requests. It is now claimed that the court erred in failing to comply with four of the requests. The exception was too general to save the question. *Drouin* v. *Wilson,* 80 Vt. 335, 67 Atl. 825.

*Judgment affirmed.*