JAMES FOWLIE'S ADMX. *v.* McDONALD, CUTLER & CO.

February Term, 1909.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed May 19, 1909.

*Master and Servant—Injuries to Servant—Burden of Proof—
    Assumed Risk—Fellow Servant—Pleading—Variance—
    Opinion Evidence—Competency—Conclusiveness of Find-
    ing.*

In an action for the death of plaintiff's intestate while working with
    a dump car at defendant's quarry, the declaration, in describing
    the accident, alleged that "the said plaintiff's intestate, in pur-
    suance of said employment, was then and there put to work by
    said defendants in the use and operation of a certain dump car,
    furnished by said defendants for the said plaintiff's intestate to
    work with and assist in operating in removing the refuse and
    grout from said defendant's quarry to the defendant's dump."
    *Held,* that proof that the accident occurred while the intestate
    was at work on the dump did not constitute a variance, and, if it
    did, it was an immaterial one, as the only purpose of the allega-
    tion was to show that the intestate was then engaged in the line
    of his duty.

Generally, an allegation not necessary to the statement of a cause of
    action is formally, rather than essentially, descriptive, and need
    not be proved as laid.

Where it does not appear that the matter here relied on as constituting
    a claimed variance was passed upon below it will not be con-
    sidered.

In an action for the death of plaintiff's intestate, plaintiff called a
    witness to prove that the intestate was inexperienced in the work,
    whereupon defendant objected to the testimony on the ground that
    it was opinion evidence and the witness not qualified as an expert,
    but added that he had no objection to the witness stating how the
    intestate worked and what he did. *Held,* that defendant's general
    exception to the admission of the opinion of the witness was suffi-
    cient to reserve the question of its admissibility.

A finding of fact by the trial court against the competency of a witness offered as an expert is conclusive, unless it appears from the evidence to be erroneous or founded on an error of law.

A witness offered as an expert may be able to do the work in question and to testify about it, and yet the trial court be justified in finding that he is not an expert in the legal sense. Some latitude of discretion in such matters must be allowed to trial court, which sees the witness and has a better opportunity than this Court to judge of his qualifications.

A nonexpert witness must, so far as possible, state the facts on which he bases his opinion, and the same rule governs the testimony of experts, except that they may give an opinion based on facts testified to by others, as well as by themselves.

Where a nonexpert witness fails to state the facts on which he bases his opinion, it cannot be said that the admission of such opinion was harmless.

In an action against a master for the death of a servant the burden is on plaintiff to show that the decedent did not assume the risk of the danger that caused his death.

Evidence *held* sufficient to make the questions of assumed risk, and whether the accident was due to the negligence of a fellow-servant, for the jury.

In an action against a master for the death of a servant a motion to direct a verdict for defendant, on the ground that the negligence proved was that of a fellow-servant, was properly denied, where the evidence tended to show concurring negligence on the part of the master.

CASE for negligence. Plea, the general issue. Trial by jury at the September Term, 1907, Washington County, *Waterman*, J., presiding. Verdict and judgment for the plaintiff. The defendants excepted. The opinion states the case.

*Richard A. Hoar* and *H. R. Bygrave* for the defendants.

There was a material variance between the declaration and proof as to the place of the accident. The declaration places it between the top of the dump and the quarry; while proof shows that the accident happened on the dump, which is no part of the quarry. *Shaw* v. *Wallace*, 25 N. J. L. 453. As was said in *Allen* v. *Goff*, 13 Vt. at p. 148: "Matters of description must be

proved precisely, perhaps literally, as set forth, and it cannot be rejected as surplusage, though its insertion was unnecessary.'' *Derragon* v. *Rutland,* 58 Vt. 128; *Weston* v. *Cushing,* 45 Vt. 531.

It was error to admit in evidence the opinion of the non-expert witnesses as to the experience and ability of the deceased. *Houston* v. *Brush & Curtis,* 66 Vt. 331; *Magoon* v. *Before,* 73 Vt. 281; *Brown* v. *Doubleday,* 61 Vt. 523; *Moore* v. *Haveland,* 61 Vt. 58; *Stowe* v. *Bishop,* 58 Vt. 498; *Carpenter* v. *Corinth,* 58 Vt. 214; *Campbell* v. *Fairhaven,* 54 Vt. 336; *Crane* v. *Northfield,* 33 Vt. 124.

*John W. Gordon* and *S. Hollister Jackson* for the plaintiff.

The opinion of the non-expert witnesses, was admissible under the rule that ''Where the facts are of such a character as to be incapable of being presented with their proper force to any one but the observer himself, so as to enable the triers to draw a correct or intelligent conclusion from them without the aid of judgment or opinion by the witness who had the benefit of personal observation, he is allowed to a certain extent to add his conclusion, judgment or opinion.'' *Bates* v. *Sharon,* 45 Vt. 474; 3 Wig. on Ev. §§ 1921, 1924; *Cavendish* v. *Troy,* 41 Vt. 99, 107-109; *Cornell* v. *Greene,* 10 S. & R. 16; *Clark* v. *Baird,* 9 N. Y. 185; *Evans* v. *People,* 12 Mich. 35; *Com.* v. *Sturtivant,* 117 Mass. 122; *Lester* v. *Pittsfield,* 7 Vt. 161; *Clifford* v. *Richardson,* 18 Vt. 621; *Folsom* v. *Concord,* 46 Vt. 135; *Knight* v. *Smythe,* 57 Vt. 529; *State* v. *Ward,* 61 Vt. 181.

POWERS, J.    The plaintiff's intestate, James Fowlie, was killed while in the defendant's employ. He was, at the time, assisting one McGranahan in operating a dump-car on the grout pile of the defendant's quarry. The waste stone was hoisted out of the quarry by steam power, run out over the dump, a distance of several hundred feet, on a blondin, lowered onto the dump-car, run to the edge of the grout pile, and dumped over. Generally speaking, the car was of the type known as the Standard Grout Car. It consisted of a four wheeled truck, on which was mounted a truck-frame of heavy timbers decked over with double hardwood plank, on which was bolted an iron circle about two feet in diameter. The top of the car consisted of a heavy plank platform, on the top of which were fastened two pieces of railroad

rails running lengthwise of the car, and to the under side of which was attached an iron table. The under side of the table was shaped into a circle corresponding with the one on the truck-frame. A king-bolt passed down through this table, through the centers of the two circles, and through the plank of the truck-frame. It was designed to hold the platform and truck-frame firmly together, but to allow the platform to turn freely on the circles as a turntable. The king-bolt had a square head on the top end, and a thread with a heavy nut on the lower end. On the front end of the iron table was attached a cross-arbor, which at each end passed through iron lugs attached to the under side of the platform. At the rear end of the iron table was a similar arbor, but instead of its passing through two lugs, its ends engaged two iron jaws fastened to the under side of the platform. The front arbor allowed the platform to tilt forward until the front end of it came down into contact with the sills of the truck-frame,—the jaws rising from the rear arbor and returning to re-engage it when the platform was restored to its position. A chain in the rear was attached to the platform and hooked over a hook in the truck-frame. This chain prevented the platform from turning around on the circles and from tilting forward accidentally. The turntable allowed the platform to turn on the truck-frame so it could be tilted to either side or to the rear, but it was always the same end of the platform that went down. So if it was desired to dump a stone to one side or the rear, the platform had first to be turned on the turntable so that the nose pointed in the desired direction. The plaintiff's evidence tended to show that the platform of the car was too long for the trucks; that it was one which was made for a larger car, and was taken therefrom and attached to this car at some previous time when this car was being repaired; that it made the car dangerously top-heavy; that the hole through which the king-bolt passed was too large for the pin, thereby giving the table unnatural instability,—causing it to "wobble," the witness said; and that the nut on the lower end of the king-bolt had worn into the wood of the frame some distance, thereby giving the turntable and platform a "play" which increased the tendency of the platform to tilt unexpectedly; and that these defects and conditions proximately contributed to the disaster. Other defects were testified to, but it does not seem clear that

they had anything to do with the accident, so we make no reference to them.

A large stone came out on the blondin. The car was placed in position and trigged. The stone was lowered onto it and released from the chain which held it. McGranahan kicked out the trig which held the car, and he and Fowlie by pushing started the car along the track toward the place where the stone was to be dumped. As they started the car, it suddenly tipped toward them as they stood behind it, shot forward, and the stone slid off onto Fowlie and crushed him. The platform was in proper position, the rear chain was fastened, and nothing about the car was broken or damaged by the accident.

I.   The first point made by the defendants is that there is a fatal variance between the allegations and the proof, in that the declaration alleges that the injuries were received by Fowlie while he was at work *between* the quarry and the dump, while the proof shows that the accident happened while he was at work *on* the dump. The point is not well taken. In the first place, the defendants misconstrue the allegation referred to. It is practically the same in each count, and amounts to this: " * * * the said plaintiff's intestate, in pursuance of said employment, was then and there put to work by the said defendants in the use and operation of a certain dump-car furnished by the said defendants for the said plaintiff's intestate to work with and assist in operating in removing refuse and grout from said defendant's quarry to the defendant's dump. This language does not necessarily imply that Fowlie's duties required him to participate in all the processes whereby the removal of the grout from the quarry proper to its final resting place on the dump was accomplished. It is quite consistent with the facts proved,— that the car was one of the instrumentalities employed in that general undertaking, and that Fowlie's duties pertained to one part of that general undertaking. But whether the proof literally conforms to the allegation or not, whatever of variance there may be is immaterial. The only purpose of the allegation quoted is to show that Fowlie was then engaged in the line of duty in the use of an instrumentality furnished him by the defendants with which to do his work. Further than this the pleader need not have gone. The words "in removing refuse," etc., might as well have been omitted.   It is only the matter of essential description that need be proved as laid. Generally

speaking, an allegation not necessary to the statement of the cause of action,—to which class this allegation belongs—is formally, rather than essentially descriptive, and need not be proved as laid. This is the doctrine of our cases, including those cited by the defendants. It is now urged that the evidence disclosed that the defendants owned and operated other quarries with dumps and cars, and so the variance referred to became misleading and like the one in *Derragon* v. *Rutland,* 58 Vt. 128, 3 Atl. 332. But it does not appear that this point was made below, and therefore it will not be here considered, since it does not appear that the variance is "material and substantial, affecting the right of the matter." P. S. 1986.

II.  As the cause was tried and submitted below, it was material for the plaintiff to show that Fowlie was an inexperienced man in the business he engaged in, and that he ought to have been warned of the dangers incident to the use of the car and instructed how to avoid them. To prove his inexperience, the plaintiff offered the opinion testimony of McGranahan and other experienced quarrymen, based upon their observation of Fowlie's appearance when he was doing the work. This was objected to by the defendants on the ground that it could not be shown by expert testimony. After some discussion of the matter, the court enquired of the plaintiff's counsel, "What you propose to show by this witness [McGranahan] is, not only what is required in this kind of work, but that this man [Fowlie] acted as if he was an unskilled laborer, is that it?" To which counsel for the plaintiff replied, "Yes, unacquainted with the business." Thereupon, various questions were asked, objections made, questions and answers withdrawn and stricken out, and considerable discussion had about the admissibility of the evidence,—counsel for the plaintiff all the time insisting upon the right to show by the witness that Fowlie appeared to be unacquainted with the business, and counsel for the defendants all the time insisting that such evidence was improper and inadmissible. On one or more occasions, counsel for the defendants said in substance that there was no objection to the witness stating how Fowlie worked, what he did, and all about it. Finally, after much discussion, the court, having twice warned plaintiff's counsel of the hazard of the testimony offered, said to him: "We have made the suggestions that we have made in regard to this line of testimony, and we have concluded that, subject to the

objection and exception on the part of the defendants, you may proceed with the witness and ask him in regard to these matters just as fully as you see fit to go." Then being inquired of by plaintiff's counsel, "Now, Mr. McGranahan, you may tell in detail in what way he did his work," the witness replied that he did his work like a man who had never worked about a quarry. Counsel for the defendants interrupted the witness, saying that the reply did not answer the question, and explained that the witness could state how he worked. Subject to the defendants' exception, the answer was allowed to stand. More to the same effect followed, and much the same thing happened when the witnesses Shappy and Dowd were on the stand.

During all this time, counsel for the defendants yielded nothing of his original position regarding opinion evidence being admissible. His assent to the witness stating how Fowlie did his work manifestly related only to the methods employed by him, and allowed the witness to state facts only. The character of the witness was such, that it should have been apparent to all that if this line of examination was pursued it would result in the witness merely giving an opinion of Fowlie's experience. In all the circumstances, we think the responsibility rested upon plaintiff's counsel and that the risk of this line of testimony was his; it seems plain that he so understood it at the time. The general exception allowed by the court (to say nothing of those specifically taken from time to time) is sufficient to raise the question of the admissibility of the testimony.

In determining this question of admissibility, it is to be borne in mind that Fowlie's experience in quarry work generally is not involved; it was only important to know whether he was so ignorant of this particular department of the work as to require instructions.

The offer of this testimony was first put upon the ground that the witness could speak as an expert. But when the court was required to make a finding on the question of competency, it announced that the witness knew how to do the work he was then engaged in, and to testify about it but that he was not qualified to pass upon Fowlie's work or to say whether he was experienced or inexperienced. If this is to be construed as a finding of fact against the competency of the witness, it will have to stand unless it appears from the evidence to be erroneous or founded on an error of law. *Lamoille Valley R. R. Co.* v. *Bixby,*

57 Vt. 548; *Maughan* v. *Burns' Est.*, 64 Vt. 316, 23 Atl. 583. We cannot say that the evidence necessarily made the witness competent to give testimony as an expert,—assuming that it was a proper case for the admission of expert testimony. All that the evidence disclosed may have been true and the witness able to do the work himself, and to testify about it, yet it does not necessarily follow that the witness was an expert in a legal sense. From the very nature of things some latitude of discretion must be allowed in such matters to the trial court who sees the witness and has a better opportunity than this Court to judge of his qualifications. It is not enough that the witness has had an opportunity to acquire special skill; it is not enough that it appears likely that he has acquired special skill; if the evidence is inconclusive, this Court will not disturb the finding. *Wright* v. *Williams' Est.*, 47 Vt. 222. If the language of the court is to be construed as a ruling that it was not a proper matter for the receipt of expert evidence, it was a ruling against the plaintiff not excepted to, and therefore the law of that trial, and the admissibility of the testimony must be established on other grounds. It seems that the plaintiff's counsel accepted it as a finding against his using the witness as an expert, for he twice refers to it in the transcript as such. Yet he did not abandon his attempt to put in the evidence, and he now insists that, though it be opinion evidence merely, it belongs to that class referred to in *Bates* v. *Sharon*, 45 Vt. 474; *State* v. *Ward*, 61 Vt. 181, 17 Atl. 483, and other of our cases, the admissibility of which is sustained on the ground that the facts are of such a character as to be incapable of being presented with proper force to any one but the observer himself. In such cases, the question does not at all turn on the experience, skill or special knowledge of the witness by whom the opinion is to be given. On the contrary, an essential element of its admissibility is found in the fact that the evidence relates to matters of such common knowledge and experience that an ordinary person—"the man in the street"—who observes for himself is presumed to have an opinion worthy of some reliance. A wide variety of subjects is to be found in the books to which this rule has been applied,— age, size, distance, mental and physical appearance, weight, identity and duration of time being among the most familiar. Passing over any inconsistency there may be in the position of the plaintiff in claiming (1) that the character of the work is

such that a new man needs instruction to protect himself from its dangers, which are not so plainly observable and comprehensible that he can see and understand them, and (2) that the character of the work is such that any one, skilled or unskilled, can tell by appearances whether the man doing it is experienced or inexperienced,—and assuming without deciding that this testimony belongs to the class now under consideration,—a proper foundation for its admission was not laid. Our rule is that the non-expert witness must so far as possible, state the facts on which he predicates his opinion. *Cram* v. *Cram,* 33 Vt. 15; *Hathaway's Admr.* v. *Nat. Life Ins. Co.,* 48 Vt. 335; *In re Blood's Will,* 62 Vt. 359, 19 Atl. 770. Indeed, with us, the rule is the same in the case of experts, except that the latter may give an opinion based upon facts testified to by others as well as by themselves. *Wetherbee's Exrs.* v. *Wetherbee's Heirs,* 38 Vt. 454; *Foster's Exrs.* v. *Dickerson,* 64 Vt. at p. 245, 24 Atl. 253; *Rogers* v. *State,* 77 Vt. at p. 470, 61 Atl. 489. The facts upon which the witness based his opinion could have been laid before the jury by proper questions and answers. The examiner appears to have appreciated this, for at first he attempted to draw them out. He only succeeded, however, in getting a restatement of the witness' opinion, and seems finally content to let the matter rest thereon. Had these facts been stated by the witness, the admission of his opinion based thereon might have been harmless, *Brown* v. *Swanton,* 69 Vt. 53, 37 Atl. 280, but without them we cannot say that the admission of the opinion was harmless, for this may have been the very evidence on which the jury found that Fowlie was inexperienced and in need of instruction; and that in turn may have been the evidence of the very negligence on which the verdict was predicated.

III. The defendants moved for a verdict on grounds which may properly be stated as follows: 1. That the plaintiff failed to prove that Fowlie was ignorant of the defects complained of, and that there was no evidence to that effect. 2. That McGranahan's negligence was that of a fellow-servant and therefore assumed by Fowlie.

1. The law of this state is as claimed by the defendants. *Dunbar* v. *C. V. Ry. Co.,* 79 Vt. 474, 65 Atl. 528. It is but another way of saying that a plaintiff must by his pleading and proof show that he did not assume the risk. But this rule does not require the testimony of one who can make direct and positive

assertion of the fact.  It may be established by the proof of such facts and circumstances as warrant the jury in drawing therefrom an inference that Fowlie was ignorant of the defects or its dangers.  See *Williams* v. *Norton Bros.,* 81 Vt. 1, 69 Atl. 146; *Mahoney's Admr.* v. *Rutland R. R. Co.,* 81 Vt. 210, 69 Atl. 652. The character of the alleged defects, their location and extent, Fowlie's short experience with the car, his opportunity to take note of its condition in the course of his employment, and the other circumstances disclosed by the record made a proper case for the jury on that point, for it cannot be said as matter of law that the defects were so plainly visible and the consequent dangers of such a character that Fowlie was chargeable with knowledge and comprehension thereof, either actual or presumed.  On this point the case is much like *O'Toole* v. *New England Gas & Coke Co.,* (Mass.) 87 N. E. 608, wherein a defective wheelbarrow was involved.

2.  Nor was there error in overruling the motion on the second ground.  Therein the motion assumes that the evidence showed negligence on the part of McGranahan; but at most, the record only discloses a conflict on that point; McGranahan's own testimony shows that the stone was of proper size to be safely handled and that it was properly loaded on the car.  And however that might have been, the motion loses sight of the concurring negligence of the master which the evidence of the plaintiff tended to establish.

*Reversed and remanded.*