*In re* HENRY BLOOD'S WILL. MARGARET E.
BLOOD, PROPONENT. LAURA E. BLOOD ET
AL., CONTESTANTS, APPELLANTS.

*When non-expert witness may give opinion. Mental capacity.*
*Will, construction of by court.*

1. A non-expert witness cannot give an opinion, except that he may some-
times state an opinion derived from facts known to him and disclosed
by him to the jury.

2. The issue being as to the testator's mental capacity, *held*, that, under
the circumstances of this case, it was not error to exclude evidence
tending to show that three years before the execution of the will the
testator was so irritable and abusive to his father that the doctors for-
bid him coming into the room, contracted a bill for liquor which he did
not pay, and did not transact " any business unless you call the selling
of articles that didn't belong to him as transacting business."

3. The court might be properly asked to construe the will in so far as its
construction would enable the jury to determine whether it was the
product of a sound mind or otherwise, but not to tell the jury what
weight they should give the will, as construed, in determining that
question. *Held*, that the construction of the will in this case was suffi-
ciently favorable to the contestants to that extent.

4. The will first appointed the wife executrix and then devised to the "said
executrix" all the property of the testator to "have, control, and dis-
pose of in whatever manner she may deem fit." *Held*, that it was a
devise to the wife as an individual and not as executrix.

Proceedings for the establishment of the will of Henry Blood.
Trial by jury at the December Term, 1889, TAFT, J., presiding.
The contestants pleaded several matters in objection to the will,
but upon trial insisted only on the mental incapacity of the tes-
tator. Verdict for the proponent. Exceptions by the contestants.

The proponent was the wife, and the contestants the mother
and sisters of the testator. The testator and proponent were
married in July, 1886, and the will was executed April, 1888.
The marriage of the testator was very distasteful to the contest-
ants, who refused to recognize the proponent as a member of
the family. There was no evidence tending to show that the
testator entertained feelings of hostility towards the contestants.

The testator was addicted to the excessive use of alcohol and died of alcoholism induced thereby, and the evidence of the contestants tended to show that this disease was allied to insanity, and would occasion violent antipathies in its victim towards those with whom he was upon the most friendly terms.

The contestants offered the depositions of the following persons, from which the following questions and answers were excluded:

Maud Sanderson.—"Int. 13. From your knowledge of your brother's conduct, habits and mental condition, what do you say about his capacity in April, 1888, to make a will? Give your judgment and reasons therefor."

"Ans. Well, I should say he had no capacity whatever, and I believe from my own experience and from what I have heard from different members of my family, who saw Henry in the last two years of his life, that he was most incompetent to draw up any will, unless taken, we may say, in a mood of maudlin imbecility, a state which always followed the terrible sprees that he went on, and using untiring persuasion and undue influence."

Laura S. Converse.—"Int. 12. From your knowledge of your brother, his doings and his habits, what do you say was his capacity in April, 1888, to make a will? State your judgment and reasons therefor."

"Ans. I think he had no capacity whatever; for no one being under the influence of spirituous liquors continually could be in any kind of mental condition to construct a deed of any kind. I said 'perform' at first, but I would withdraw that word and say 'construct' a deed of any kind."

The contestants also offered the following questions and answers from the deposition of Hattie Blood Lee:

"Int. 3. When did you meet your brother at your home the last time and what was the occasion and who was there with you?"

"Ans. In the month of March, 1885, my brother spent a month in my house in New York, at the time of my father's illness. My husband and my children. My father was sick at the club house, not at my house. My brother came down from Vermont, having been sent for by some member of the family, as they thought he, my father, was then in a very dangerous condition. (My brother was so irritable and abusive to my

father that the doctors forbid him coming into the room. I. state this of my own personal knowledge). I was with my father during his entire illness there."

Proponent seasonably objects to the witness stating the conduct of Henry Blood to his father and the direction of the physicians.

" Int. 4. What was the conduct and condition of your brother when so at your house, with reference to intoxicating drink ?"

Objected to.

" Ans. I attribute his manner of speaking and acting to the use of intoxicating liquors. But he laid great stress upon having reformed completely and tried to assure me of it. Shortly after, returning home one day, I found him partially undressed, on the library sofa, in a state of intoxication bordering almost on insensibility. He slept in this room 18 hours, and when I conversed with him he confessed to not having reformed, and assured me that he was taking then only beer, as I had from time to time supplied him with small sums of money. I believed him."

Whole of the foregoing answer is objected to by proponent.

" Later on I found out that he had run up a bill at the Union League Club for $50, or thereabouts, (and the corner grocer— my grocer—sent me the bill that my brother had run up, stating that my brother had refused to pay and wanted to know if I would please pay it. The amount I have forgotten)."

Proponent objects to remainder of answer and particularly what she states was told her by the corner grocer.

" Int. 8. Will you state what was Henry's capacity for the transaction of business at the time he was at your house in 1888, as you have stated ? And give your reasons for your judgment."

Objected to.

" Ans. During the time that he lived with me he was in no business (and I never heard of his transacting any business unless you call the selling of articles that didn't belong to him as transacting business)."

Answer objected to.

" Int. 9. What do you say of his capacity for the transaction of any important matter of business, such as the disposition of property by will ?"

" Ans. As long as I have known him I should not call him competent to make a will or transact business of any kind. He certainly had no appreciation of value and knew no difference between *meum* and *teum*. He would sacrifice his own and other members of the family's property for a mere trifle to satisfy the demand of the moment, which was generally to get intoxicating liquor."

Answer is objected to.

The court excluded the portions of interrogatories 3, 4 and 8 enclosed in brackets and the whole of 9. No one of the above deponents saw the testator after the death of his father in 1884, or 1885.

The contestants requested the court to explain to the jury as touching the testator's mental condition when the will was executed, what would be the disposition of the testator's property in the event of a breach of the conditions or either of them by the testator's widow; and in that view what would be a breach of the condition first mentioned in the will.

In response to this request the court said:

" There is a provision in the will that the testator's widow must take the property upon condition that in no case shall she give or bequeath one cent of said estate to any member of his family or to any relations of her own. Well, it is a difficult matter to construe a will sometimes. Sometimes it is pretty difficult to construe a will of one who ought to be an expert in drafting one. It is very often that the will of a great lawyer contains provisions that are not valid. It is difficult to say what the construction should be. This will as it reads gives the property to the widow on condition that she shall not give nor bequeath any of it to any of their relatives; any member of his family nor any relations of her own. She would hold it absolutely if she did not violate that condition, and in the event or her death, it would go where any property of hers would go, to her heirs. If she violated the condition, I am inclined to think it would go back to his estate, to be divided as if he left no will, which under the laws of this State would entitle her to one or two thousand dollars—I have not in mind which—and one-half the remainder, her share of the estate. The remainder would be divided equally between his mother, brother and sisters. That

would be the division, I think, in case she violated the condition of the will, or disentitled herself to the estate under the will. You might perhaps take into consideration that in making it in this respect he may not have clearly understood what the result would be in case she did not comply with the condition, or in case she attempted to give it away in violation of his bequest in the will. But that is my understanding as to what would become of the property, in case she attempted to dispose of it."

To the charge above stated the contestants excepted.

The devising portion of the will was as follows:

"Second.—I give and devise to my said executrix in case of there being no issue to our marriage, all my estate, real, personal and mixed, of which I shall die seized and possessed, or to which I shall be entitled at the time of my decease; she to have, control, and dispose of which, in whatever manner she may deem fit, upon condition that in no case shall she give or bequeath one cent of said estate to any member of my family or to any relations of her own."

*Wing & Fay, Samuel E. Pingree* and *Hunton & Stickney,* for the contestants.

The opinions of the deponents as to the mental capacity of the testator should have been admitted. It is well settled that a non-expert witness may give his opinion as to the sanity of one with whom he is acquainted. *Morse* v. *Crawford,* 17 Vt. 499; *Clary* v. *Clary,* Ired. 78; *Cram* v. *Cram,* 33 Vt. 19; *Crane et al.* v. *Northfield,* 33 Vt. 126; 1 Woerner's Am. Law of Administration, 40; 1 Jarman Wills, (Rand. & Tal. Ed.) note, pp. 97–131; *Lester* v. *Pittsford,* 7 Vt. 158; *Clifford* v. *Richardson,* 18 Vt. 620; *Fairchild* v. *Bascomb,* 35 Vt. 398; *Cavendish* v. *Troy,* 41 Vt. 99; *Hathaway's Admr.* v. *Nat'l Life Ins. Co.,* 48 Vt. 350; *State* v. *Hayden,* 51 Vt. 303.

The court did not properly construe the will.

*J. G. Harvey, D. C. Denison* and *W. E. Johnson,* for the proponent.

The interrogatories were properly excluded. A non-expert witness can only state his opinion as to the sanity of a person in connection with the facts upon which that opinion is founded,

and of which the witness had personal knowledge. These witnesses had not seen the testator for three years. *Morse* v. *Crawford*, 17 Vt. 502; *Cram* v. *Cram*, 33 Vt. 15; *Fairchild* v. *Bascomb*, 32 Vt. 415; *Hathaway* v. *Ins. Co.*, 48 Vt. 336; *State* v. *Hayden*, 51 Vt. 303.

No witness may give his opinion as to whether a person is. competent to make a will, that being the question for the jury. *Fairchild* v. *Bascomb*, 35 Vt. 415.

The only exception of the contestants to the charge was to it as given, not to any neglect to charge. We submit that the charge as given was too favorable to the contestants.

The opinion of the court was delivered by

Ross, J. The three full questions and answers in the depositions excluded by the County Court have the common defect of calling upon the witness to pass upon the precise question on trial before the jury. This is never allowable. A non-expert witness must be confined to a statement of facts, or his opinion formed from facts known by the witness and disclosed to the jury. It is the province of the jury, under proper instructions. from the court, to determine the issue upon which such facts and opinion are to be considered. This is too well established to require the citation of authorities. We find no error in the exclusion of other portions of answers in the deposition of Mrs. Lee. What her grocer told her was hearsay, and inadmissible for that reason. When she said, not in answer to the interrogatory, that the testator was "so irritable and abusive to his father that the doctors forbid him coming into the room," she does not state facts bearing upon the mental condition of: the testate, which could aid the jury in determining whether three years later the testator had mental capacity to make a. will, the only issue on trial. While his mental condition and capacity at that time might bear remotely upon his capacity to make the will three years later, she, without stating the occasion or extent of his inability, makes the statement so indefinitely and so related to the condition of his father and the opinion of

the doctors, that it could furnish no proper aid to the jury in determining this issue. It would be more likely to mislead than otherwise, and was properly excluded. The court also excluded from an answer " unless you call the selling of articles that didn't belong to him a transacting business." It does not fully appear whether this statement of the witness was made upon personal knowledge or hearsay. If the former, the witness had already fully stated her knowledge upon that subject and the contestants were not prejudiced by the exclusion ; and if the latter, it was hearsay and inadmissible.

II.  The request of the contestants, so far as it called upon the court to construe the will to enable the jury to judge whether it was probably the product of a sound, disposing mind, or otherwise, was a suitable request.  So far as it called upon the court to explain to the jury the weight they should give to the will as construed, in determining the mental capacity of the testator, was improper.  No exception was taken to the failure of the court to comply with the request, but to a portion of the charge construing the will. We do not think that this exception is well taken.  That portion of the charge particularly excepted to, in which the court say, " you might perhaps take into consideration that in making it in this respect he may not have clearly understood what the result would be in case she did not comply with the condition, or in case she attempted to give it away in violation of his bequest in the will," was unfavorable to the proponent rather than the contestants, as it intimated that from the provision of the will the jury might find that the testator did not understand nor comprehend what he did, and, impliedly, that he did not know what he desired to do.  The contestants have no ground to complain of this portion of the charge.  The construction given to the condition that the legatee should not give nor bequeath one cent of the estate to any member of the testator's family or to any of her relatives, that its violation would work a reversion of the estate, was as favorable to the contestants as they were entitled.  It might

(24)

well be contended that this condition is so far repugnant to what preceded as to be void. As construed it gave force and expression to the settled hostility of the testator to the contestants, which the contestants' testimony tended to show was without foundation or reason, and hence that the will was not the product of the testator's mind when in normal condition.

It is contended that the court should have instructed the jury that the wife took under the will only in her representative capacity, as executrix. The clear intention of the testator was to devise the property to her as an individual designated by the title, executrix, which he had just conferred upon her.

*Judgment affirmed and certificate ordered.*