IN RE NANCY ESTERBROOK'S WILL.

Special Term at Brattleboro, November, 1909.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed January 20, 1910.

*Wills—Contest—Mental Capacity—Undue Influence—Evidence
—Beneficiary's Financial Condition—Opinions—Witnesses
—Cross-Examination—Impeachment—To Show Interest—
Refreshing Memory—Harmless Error—Procedure.*

In a proceeding contesting a will for lack of testamentary capacity,
a witness, having testified that she lived across the street from the
testatrix, was acquainted with and occasionally visited her, and
having narrated the circumstances attending the execution of the
will, was properly allowed further to testify that at the time of ·
the execution of the will she noticed nothing peculiar in the
testatrix.

A witness, having fully narrated the circumstances attending the
execution of the will, remarks of the testatrix in respect of the will
and other matters, and given an opinion, based on her testimony,
that then the testatrix was of sound mind, was properly allowed
further to testify that she did not notice anything peculiar in the
talk or actions of the testatrix.

A witness, having narrated two interviews with the testatrix, in the
second of which she asked him to settle her deceased husband's
estate, and he told her he could not, was properly allowed further
to testify that thereupon she asked him to recommend some one to
do it, whereupon he recommended a man, with whom he later
communicated, and who immediately called on her, and, at her
request, summoned a lawyer, who drew her will.

A witness, having testified that he had known testatrix for a number
of years, and had lived across the street from her for eighteen or
nineteen years, was properly allowed to further testify that, so far
as he could see, there was no marked difference between her mental
condition when he had two narrated interviews with her shortly
before her execution of the will, and her mental condition during
his previous acquaintance with her; as this tended to show that

her mind was not in any marked degree affected by increasing age, though he said nothing about mental condition in former years.

A witness having, without objection, testified that she had frequently called upon and talked with testatrix, and that the latter's mental condition was sound and all right, the admission of her further testimony that she had never seen testatrix do or say anything inconsistent with a sound mind, if improper, as a violation of the rule that a lay witness must base an opinion as to a person's sanity on things testified to by such witness, was harmless.

It having been brought out on cross-examination of a beneficiary under a will that he had some reason for not visiting any of his relatives, except the testatrix, on a certain occasion, it was material for the proponents to show, on re-direct examination, that the reason did not exist till after the death of the testatrix, and, in that connection, to show what the reason was.

In a contest of a will for lack of testamentary capacity, it was proper to allow a witness for proponents to narrate an explanation given to her by testatrix, a month after the execution of the will, as to how testatrix received a fall some time before, that she went up stairs to see the dog, and that, in coming down, after reaching the last step, she thought she had got down and stepped off and fell.

In a contest of a will for lack of testamentary capacity and for undue influence, evidence of the financial condition and income of the principal legatee, a nephew of the testatrix, was admissible in connection with evidence that she knew of his financial condition.

In a will contest, where it appeared that shortly after the execution of the will the principal beneficiary thereunder petitioned that a guardian be appointed for testatrix on the ground that she was physically and mentally incapable of taking care of herself and property, the cross-question asked him: "When there was a hearing involving the question of your aunt's sanity, on your request, and a petition signed by you, stating that she was of unsound mind, did you testify in support of that petition?" was properly excluded, as containing the unwarranted assumption that the guardian proceeding was based on the theory that the testatrix was insane.

This same witness, having been cross-examined for the purpose of impeachment by having read to him various questions and answers taken from his testimony on the hearing on said petition for a

guardian for testatrix, and being required to say whether he so testified, was on re-direct asked, "Up to the time you were forbidden entrance?" referring to a visit to testatrix's home, and he gave an answer, but what it was, and what was the significance of the elliptical question does not appear. Thereafter he was asked whether, on a repetition of the question, he did not answer "I haven't been since a week ago last Thursday," and he was then asked whether there was not put to him the question, "and her mind appeared to be as clear·as ever?" and whether his answer was, "Yes, it did," to which the witness answered that he thought he so testified. *Held*, that it should be inferred that this related to the part of his former testimony about which he had been questioned by way of impeachment, and that so it was admissible.

The question, asked contestant's witness, whether testatrix's son-in-law, one of the contestants, and who, they claimed, had always sought to fulfil testatrix's wishes, but for whom she had a dislike claimed to be unnatural, did not, at a hearing on a petition for appointment of a guardian for testatrix, object to the appointment of a certain person as such guardian, for whose appointment testatrix had expressed a desire, though not of much relevancy, its allowance was harmless, as nothing material was elicited, the witness being unable to say whether the son-in-law did object.

Cross-examination of a witness for contestants of a will by showing that he wrote an article published in a local paper regarding the guardianship of testatrix and about the principal beneficiary under the will, and that he was at the time attorney for one of the contestants, was proper, as showing his interest and zeal in behalf of one of the contestants.

Cross-examination of a witness for contestants of a will as to the affair of a certain box, the nature of which does not appear, wherein he testified that at the request of a contestant, for whom he was at the time attorney, he wrote a letter to the principal beneficiary under the will, in regard to the box, was within the rule permitting cross-inquiries to show the feelings and attitude of a witness and his relation to the parties and the case, and the question of privilege was not raised by the general objection interposed.

A witness for contestants of a will, who had testified to having visited testatrix at the time of an application for a guardian for her, and, based on his observations of her as testified to by him, had given his opinion that her mental condition was such that she did not

realize his presence, and who on cross-examination testified that nothing occurred to him as to the care testatrix was receiving, and that he recalled a conversation he had in a certain place immediately after that visit, was properly allowed further to be asked, on cross-examination, whether in that conversation he did not say there should be somebody, a trained nurse, there, to care for testatrix; as that inquiry might refresh his recollection of what he observed on his visit to testatrix.

In a will contest, it is for the court to announce, and for the jury to apply, the law of testamentary capacity, and, hence, it is improper for a witness, though a lawyer, and basing his opinion on his observations of testatrix, as testified to by him, to testify that she was not at the time of sufficient mental capacity to make a will.

The question whether inquiries are proper cross-examination is not reserved by a general objection and exception.

In a contest of a will for want of testamentary capacity and for undue influence, evidence that a contestant for whom testatrix had a dislike claimed to be without foundation and so indicating an unsound mind, told testatrix, in the hearing of one not a member of the family, about her chief beneficiary being drunk, and that his associates were low, was admissible, as showing that there was a natural ground for her dislike, and who had her ear, and who, if any one, tried to prejudice her.

In a contest of a will for lack of testamentary capacity and for undue influence, few artificial rules of evidence are to be applied, but the question whether the instrument is the product of a disposing mind, acting freely, in view of all the affection, sympathy, confidence, indifference and distrust, memories, purposes, and anticipations engendered, it may be throughout a lifetime, demands solution by an investigation fittingly untrammeled, and the inquiries must, for the most part, be carried on in accordance with liberal rules of procedure.

APPEAL from a decree of the probate court establishing an instrument as the last will and testament of Nancy Esterbrook. Trial by jury at the April Term, 1909, Windham County, *Butler*, J., presiding. Verdict and judgment for the proponents. The contestants excepted. The opinion states the case.

*Gibson & Waterman, A. E. Cudworth* and *A. P. Carpenter* for the contestants.

It was error to receive evidence of the financial condition of the principal beneficiary under the will. *Pooler* v. *Chustman*, 145 Ill. 405; *Merriman's Appeal*, 108 Mich. 454; *Murphree* v. *Senn*, 107 Ala. 424; Page on Wills, §386; *Kelly* v. *Kelly*, 168 Ill. 501; *Rush* v. *Delano*, 113 Mich. 321.

*R. C. Bacon* and *H. G. Barber* for the proponents.

The testimony of Lilly Vinton and Hilma Anderson was admissible under the rule that a witness may state how a matter appeared to him which is incapable of exact and minute description; *State* v. *Ward*, 61 Vt. 181; *Bates* v. *Sharon*, 45 Vt. 474; *Knight* v. *Smilie*, 57 Vt. 529; and the evidence was admissible under the rule that a lay witness may give his opinion based on facts to which he has testified. *Morse* v. *Crawford*, 17 Vt. 499.

Evidence of the financial condition of the principal beneficiary under the will, known to the testatrix, was admissible. *Crocker* v. *Chase*, 57 Vt. 413; *Fairchild* v. *Bascomb*, 35 Vt. 413; *In re Blood's Will*, 62 Vt. 359.

The opinion elicited from proponent's witness, though a lawyer, was the very question which the jury were to determine under proper instructions. The witness was allowed to act as judge and jury—to apply the law and determine the fact. *In re Blood's Will*, 62 Vt. 359.

HASELTON, J. This was an appeal by the contestants from a decree of the probate court allowing and establishing a certain written instrument as the last will and testament of Nancy Esterbrook, late of Brattleboro. In county court a trial by jury was had. The verdict was in accordance with the contention of the proponents, and judgment on the verdict was rendered. The will was contested on the grounds of lack of testamentary capacity, undue influence and want of due execution. Mrs. Esterbrook left sixteen nephews and nieces and they were her next of kin. Don H. Miller, one of the nephews, was the principal beneficiary under the will, and another nephew, William Miller, had bequeathed to him a substantial legacy. To the other nephews and nieces sums merely nominal were given. During the trial the contestants took various exceptions all of which relate to the admission or exclusion of evidence.

Lilly Vinton, one of the attesting witnesses, was called by the proponents. She testified that she lived across the street from Mrs. Esterbrook, was acquainted with her, and occasionally called upon her and visited with her. After narrating the circumstances attending the execution of the will she was permitted, under objection and exception, to state that on the occasion of the execution of the will she noticed no peculiarities in the talk or actions of Mrs. Esterbrook. But in connection with her other testimony the statement that she observed nothing peculiar in the witness, that is, nothing strange, unusual or unnatural was admissible. *Fairchild* v. *Bascomb,* 35 Vt. 398, 417.

Hilma Anderson, another attesting witness, was called by the proponents. She testified as to the circumstances attending the execution of the will, as to remarks of Mrs. Esterbrook in respect to the will and other matters, and gave an apparently full account of what occurred on the occasion in question. Without objection she gave an opinion, based on what she had testified to, that on that occasion Mrs. Esterbrook was of sound mind. Under objection and exception she stated that she did not notice anything peculiar in the talk or actions of the testatrix. This testimony, like that of Lilly Vinton, was, however, admissible. The official transcript is referred to for what it shows in respect to the testimony of the two witnesses, already referred to, and we have considered that in connection with the recitals in the bill of exceptions.

William H. Vinton, a witness for the proponents, testified to two interviews with Mrs. Esterbrook and that in the second interview she expressed a wish that he should settle her late husband's estate. The witness testified that he told her that he could not. Under objection and exception he further testified that he told her something about who to get to settle it; that she asked him who he thought would be a good person for that business; that he told her he hardly knew; that if she wished he would speak to Mr. Brackett; that as a result of the interview he communicated with Mr. Brackett about going up to Mrs. Esterbrook's. It appeared that immediately thereafter Brackett, at Vinton's request, called on Mrs. Esterbrook and at her request summoned A. F. Schwenk, Esq., an attorney, who responded to the summons and drew the will in question. A part of the evidence as to the interview just referred to bore upon the

mental condition of the testatrix, and the rest of it bore upon the question of undue influence, for it threw some light upon the circumstances leading up to and surrounding the execution of the will.

The same witness testified that he had known the testatrix for a number of years, that she had lived across the street from him eighteen or nineteen, and that he had seen her on quite a number of occasions before the two interviews referred to. Having so testified he was, under objection and exception, permitted to say that so far as he could see there was no marked difference between her mental condition at the times referred to and her mental condition during his previous acquaintance with her. It is urged that there was no basis for the comparison inasmuch as the exceptions do not show that the witness had said anything about her mental condition in earlier years. But without such testimony the evidence objected to tended to show that her mind was not in any marked degree affected by increasing age, and so was admissible. *Sargent* v. *Burton,* 74 Vt. 24, 28; *Fairchild* v. *Bascomb,* 35 Vt. 398, 417.

Leonora E. Smith was a witness called by the proponents. She testified that she frequently called upon and talked with Mrs. Esterbrook and that the latter's mental condition was sound and all right. This testimony she gave without objection. Under objection and exception she was then asked if she ever saw the testatrix do or say anything that was not consistent with a sound mind. She said she never did. The question was so amended as to limit the time of the inquiry to the period since the death of Mrs. Esterbrook's daughter Julia. The answer was in substance repeated. This question, either with or without the amendment, was not strictly within the rule which requires a lay witness to base an opinion of a person's sanity upon things testified to by the witness, although such a question is held proper in Massachusetts. *McCoy* v. *Jordan,* 184 Mass. 575, 69 N. E. 358. But the witness had already testified that the testatrix was mentally sound and all right and, so far as the exceptions show, had been permitted to do this without restriction, and the matter received under objection and exception added nothing to the testimony the witness had already given and so if improper was harmless.

William Miller, one of the beneficiaries referred to, was a witness. In the course of his cross-examination he testified that when he visited Brattleboro he did not visit any of his relatives except Mrs. Esterbrook and a Mrs. Smith; that he had some reason for not doing so, and that Mrs. Esterbrook did not know the reason. Thereupon in re-direct examination, under objection and exception, counsel for proponents were permitted to show that the reason did not exist until after the death of Mrs. Esterbrook, and to ask what the reason was. The witness said, "I was told not to call on her." It was material to show that the reason referred to in cross-examination did not exist until after the death of the testatrix, and while the statement of the witness as to what the reason was was immaterial, it was brought out in re-direct examination upon a matter introduced into the case by the contestants in cross-examination, and it was proper for the proponents to show that the reason was immaterial.

Sometime prior to her death the testatrix had a fall. Kate Cressy, a witness for the proponents, testified to a conversation with the testatrix, had about a month after the execution of the will, in which the latter explained how she fell. Under objection and exception she stated that Mrs. Esterbrook's explanation was that she went upstairs to see the dog—that he was hurt—and that in coming down she fell, that she thought she had got to the last stair, thought she had got down, and stepped off and fell. This explanation of Mrs. Esterbrook was properly received since the character of the statements indicated something as to her mental condition at a time very near the time of the execution of the will and so bore upon the question of her mental condition at the latter time. *In re Jane Mason's Will,* 82 Vt. 160; *Chickering* v. *Brooks,* 61 Vt. 554, 562; *Crocker* v. *Chase,* 57 Vt. 413.

The case last cited is somewhat relied upon by the contestants, but their claim is not supported by that case, the doctrine of which is clearly explained in the Mason Will case first above cited.

Don H. Miller, the nephew who was the principal legatee, was a witness and was permitted, under objection and exception, to testify as to his financial condition and his income. This testimony was made admissible by evidence in the case which tended to show that Mrs. Esterbrook was conversant with his

financial condition.  *Crocker* v. *Chase*, 57 Vt. 413, 421; *Fair-child* v. *Bascomb*, 35 Vt. 398, 417.

He also testified as to the straightened circumstances in her life time of his mother, long since deceased, and as to the relation which existed between his mother and her sister, the testatrix. The contestants argue that this evidence was clearly inadmissible; but it was received without objection, and this fact dispenses us from considering its admissibility.

Shortly after the execution of the will, Don H. Miller brought a petition to the probate court asking that a guardian be appointed for Mrs. Esterbrook on the ground that she was physically and mentally incapable of taking care of herself and property. A hearing was had upon this petition and a guardian was appointed. In Miller's cross-examination he was asked this question: "When there was a hearing involving the question of your aunt's sanity, upon your request, and a petition signed by you, stating that she was of unsound mind, did you testify as a witness in support of that petition?" This question was objected to on the ground that it contained an unwarranted assumption. But the question was insisted upon and the form of it defended as intended to elicit the understanding of the witness as to the character of the hearing upon the petition. The court excluded the question and properly did so. The question to which the witness was obviously expected to say yes or no was whether he testified as a witness in the proceedings for the appointment of a guardian. He could not well give a proper answer to that question, and in the same answer express his understanding of the character of the hearing. The question did in fact contain an unwarranted assumption. P. S. 3159; *Cowdry's Will*, 77 Vt. 359.

This same witness was, however, cross-examined, for the purpose of impeachment, as to his testimony on the guardianship hearing. Various questions and answers taken from his testimony therein were read to him and he was required to say whether or not he so testified. Thereafter in redirect examination he was asked the following question: "Up to the time you were forbidden entrance," reference being had to a visit to Mrs. Esterbrook's home. The question was answered, but it does not appear from the bill of exceptions what the answer was nor the significance of this elliptical question, and the

transcript is not referred to on this point. He was asked if upon a repetition of the question he did not answer, "I haven't been there since a week ago last Thursday." He was also asked if this question was put to him, "and her mind appeared as clear as ever?" and if his answer was, "yes it did." The witness replied that he thought he so testified. All this was subject to objection and exception but it is to be inferred that it was related to that part of his former testimony about which he had been inquired of by way of impeachment on cross-examination and that so it was admissible.

Rollin S. Childs, one of the contestants, was a son-in-law of Mrs. Esterbrook. The contestant's evidence tended to show that he had always been dutiful in that relation and had endeavored to the best of his ability to carry out every wish of his mother-in-law, and that her dislike for him, which there was evidence tending to show, was unnatural and the result of an unbalanced mental condition on her part. A. P. Carpenter, Esq., was a witness in behalf of the contestants, and it appearing that he was present at the guardianship hearing and, the proponents' evidence tending to show that it was the expressed desire of Mrs. Esterbrook to have Lucius Richardson appointed as her guardian, the proponents, under objection and exception, undertook to show that at that hearing Childs made objection to the appointment of Richardson. The apparent object of the inquiries in this behalf was to meet the claim that Childs was solicitous to carry out the wishes of Mrs. Esterbrook. Nothing material was elicited, for the witness could not say whether Childs did or did not object to the appointment of Richardson. There was not much relevancy in the inquiries, since Childs might have thought that Mrs. Esterbrook's desire to have Richardson as her guardian was not her real wish but that it too resulted from an unbalanced mental condition; but as nothing came of the inquiries, and as they may be thought to have a remote relevancy, we find no error.

It appeared that Mr. Carpenter was counsel for Mr. Childs in several matters, and, under objection and exception, the proponents in cross-examination brought out the fact that the witness wrote, for a Brattleboro paper, a communication with regard to the guardianship and Don H. Miller, and that this communication was published. The witness said he could not

tell whether he signed the article by his own name simply or as attorney for Rollin Childs, but that he was attorney for Mr. Childs at that time and may have said so in the article, though he couldn't recall whether or not he did say so. The witness said that he published the article of his own motion and had some interest in the matter as counsel for Mr. Childs but not otherwise so far as he could say. The examination above referred to, and more to the same effect, was proper in cross-examination, for the obvious purpose of it was to show the interest of the witness and his zeal in behalf of one of the contestants.

Mr. Carpenter was inquired of in further cross-examination as to the affair of a certain tin box the nature of which does not appear from the exceptions. He said that at the request of Mr. Childs he wrote a letter to Mr. Miller in regard to the box. This evidence was received under objection and exception, but these were general. If any question of privilege was involved, it was not raised. The cross-examination in the matter of the tin box, and the doings of the witness in reference thereto, were within the rule permitting cross inquiries for the purpose of showing the feelings and attitude of a witness and his relations to the parties and to the case.

Z. H. Albee, the Probate Judge who sat in the hearing of the petition for the appointment of a guardian, testified in behalf of the contestants that on June 1, 1908, he called upon Mrs. Esterbrook, that he found her lying on a bed apparently in a dazed condition, that he asked her about the matter of a guardian several times, that she did not appear to comprehend his questions and did not appear to know that he was there, and he gave his opinion as to her mental condition, based upon his observations as testified to by him, that it was such that she did not realize that he was there or what he was there for. In cross-examination he was asked if anything occurred to him at the time of the visit as to the care Mrs. Esterbrook was receiving. He said he thought not, from observation. This inquiry and answer were not objected to and could not well be, for it was material to know whether the condition in which the judge found Mrs. Esterbrook was primarily due to mental weakness, or whether it might have been temporarily brought on by lack of care, nursing and nourishment. Having given the answer stated, the witness was asked if he recalled a conversation in

Mr. Fitts' office immediately after the visit to Mrs. Esterbrook. His reply was in the affirmative. He was then asked if in that conversation he didn't say that there should be somebody there to care for her, a trained nurse. Here an objection was interposed, and two or three questions and answers were put and given under objection and exception on the ground that the inquiries were not proper cross-examination. But these inquiries were calculated to refresh the recollection of the witness as to what he observed on the occasion of his visit to Mrs. Esterbrook and were proper in view of the previous testimony of the witness.

Colonel Haskins, a witness for the contestants, gave in evidence his acquaintance with Mrs. Esterbrook, his observation of her, and his opinion, based on the matters testified to by him, that she was not of sound mind. He was further asked to give his opinion of her testamentary capacity at a certain time before the making of the will, basing his opinion upon his observations of her at that time as testified to by him. The answer expected, as stated by counsel, was that she was not at that time of sufficient mental capacity to make a will. The answer was not received, and in its exclusion there was no error. *Fairchild* v. *Bascomb*, 35 Vt. 398; *Chickering* v. *Brooks*, 61 Vt. 554, 563; *In re Blood's Will*, 62 Vt. 359.

It appeared that Colonel Haskins is a lawyer, but that fact was immaterial. The law as to testamentary capacity must be given by the court and applied by the jury.

Mrs. Daniel Doyle, a witness for the contestants, gave evidence that she, as a nurse, took care of Mrs. Esterbrook for some time prior to her death. The witness testified as to Mrs. Esterbrook's mental and physical condition during that time and as to conversations between the witness and the testatrix. On cross-examination she said that Rollin Childs told Mrs. Esterbrook about Don Miller's being drunk, and that Don's associates were low, that he belonged to the Red Men, and that the Red Men were the scum of the earth. This testimony on cross-examination was received against a general objection, and an exception was taken. As has already been stated it appears from the exceptions that Mrs. Esterbrook had a dislike for Mr. Childs, and that the contestants claimed that this dislike was without foundation and evidence of an ill-balanced mind. But if Childs talked to Mrs. Esterbrook about her nephew Don, her

principal legatee, in the fashion narrated by Mrs. Doyle, in the hearing of one not of the family, his talk indicated that there was a natural ground for the dislike mentioned. It is argued for the contestants that the talk testified to by Mrs. Doyle had a natural tendency to excite in the minds of the jury sympathy for Don Miller and prejudice against Rollin Childs. But if so, much more is it probable that such talk had a like natural effect upon the mind of Mrs. Esterbrook. One of the issues made by the contestants was undue influence, and it was proper for the proponents to show who had the ear of the testatrix, and who if any one endeavored to instil prejudices into her mind.

These remarks to Mrs. Esterbrook stand as did the letters in *Foster's Exrs.* v. *Dickerson,* 64 Vt. 233, 250, which were received in evidence on proof of facts tending to show that the testatrix there must have read them, and since the views therein expressed were such that they might well be thought to have influenced her.

The question of whether this testimony was related to the direct examination of Mrs. Doyle is not raised by the general objection and exception. No error appears.

A few exceptions, not noticed, were taken, but these were on hearing expressly waived.

In a will case, where lack of testamentary capacity on the part of one not before the tribunal and undue influence exerted upon such a one are the grounds of contest, there are a few and but a few artificial rules to be applied. The great problem of whether or not the instrument offered for probate is the product of a disposing mind acting freely in view of all the affection, sympathy, confidence, indifference and distrust, likes and dislikes, memories, purposes and anticipations engendered, it may be throughout a lifetime, demands solution through an investigation befittingly untrammeled, and the inquiries must for the most part be carried on in accordance with liberal rules of procedure.

So far as the exceptions show the will here in question was allowed and established as the result of carefully conducted inquiries governed by such rules of law as were applicable, and the result is that

*The judgment is affirmed and ordered to be certified to the probate court.*