## IN RE ORZELLA C. BEAN'S WILL.

October Term, 1911.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS, JJ.

Opinion filed February 19, 1912.

*Witnesses—Cross-Examination—Extent—Wills—Contest—Undue*
  *Influence—Evidence—Opinions—Responsiveness of Answer—*
  *Harmless Error—Argument of Counsel—Instructions—Excep-*
  *tions—Sufficiency.*

There is no need to ask a witness what he means by an answer that is sus-
ceptible of but one meaning, and so the answer, "Not to my know-
ledge," to a question on cross-examination as to whether witness had
made a designated statement, was unambiguous, and a further question
as to the witness's meaning was properly excluded.

In a will contest it is not permissible for a witness to testify as to whether
the testatrix was of "disposing mind."

Where the proponent of his mother's will, which was being contested on
the ground of testamentary incapacity and of undue influence, testified
that he had corresponded with his parents " for the last ten years,"
error does not affirmatively appear in the exclusion of the question
asked on cross-examination, "Did you write this: 'I want you to
have these things fixed up as soon as you can so there will be no fighting.
All you have to do is to give them all one dollar and they can't break the
will'"?, because the question does not reveal whether the inquiry relates
to a letter written to the witness mother or to his father.

A question calling for the opinion of a non-expert witness and not confining
him to an opinion based on the things to which he had testified, nor
even based on what he had observed, was properly excluded.

In a will contest, the testimony of attesting witnesses, received without
objection, that at the time she executed the will testatrix was of sound
and disposing memory, did not entitle contestant, on cross-examination
of another witness for proponent, to take the opinion of that witness
as to whether testatrix was of disposing mind.

In a will contest, where the proponent was testatrix's son, to whom the
will gave nearly the whole estate, and the contestants were her other
children, who were bequeathed only nominal sums, and proponent's
evidence showed that testatrix had opposed the marriage of one of
the contestants and after the marriage  was unfriendly to her and her
husband, testimony of that contestant as to abuse of her by her husband

was relevant only as connected with evidence of testatrix's knowledge thereof.

As great influence of a son with a parent may as well be proper as undue, and as undue influence cannot ·be shown by opinions not based on disclosed facts, the answer of a contestant of a will to the question, "What have you ever noticed proponent do in respect to testatrix"?, who was her brother, "Well he wanted she should do as he said, and had great influence over her," was properly excluded, as it was neither responsive nor proper evidence.

Where hearsay evidence of relationship was received without objection, and there was no motion to strike it out, the other party was not harmed by thereupon allowing the witness to name his informant, as that gave opportunity to refute his testimony.

The appearance of a witness on the stand may be proper matter of comment by counsel in argument.

Where a witness, testifying in the spring of 1911, said that he kept diaries for a series of years, but could not tell whether he kept one for 1909, and later testified that he "had no diary for 1909," error cannot be predicated on the remark of counsel in argument, "If he had thought, he would have brought the diary of 1909 with him too," where counsel based the remark on designated conduct of the witness while on the stand.

Where there are sixteen requested instructions, exceptions "to the refusal of the court to comply with each and every request," and to the charge as given "in respect to each and every request," do not comply with County Court Rule 28, §2, requiring that the points relied on for review shall be presented to the trial court before the jury retires, and are too general to reserve any question.

To reserve an available exception to the charge of the court, the exceptor must specifically point out the claimed errors, so that the presiding judge may, on reflection, correct or amplify the charge.

It is the duty of the trial court, whether requested or not, to instruct the jury as to the law that governs the case, and an exception lies as well to an omission so to charge as to an erroneous statement of the law.

Exceptions not relied on by the exceptor, nor briefed by him, will not be considered.

APPEAL from a decree of the probate court establishing an instrument as the last will and testament of Orzella C. Bean. Trial by jury at the March Term, 1911, Washington County, *Miles*, J., presiding. Verdict and judgment for the proponent. The contestants excepted. The opinion states the case.

*Fred L. Laird* and *Harry C. Shurtleff* for the contestants.

*R. M. Harvey* and *John W. Gordon* for the proponent.

HASELTON, J.   This was an appeal from a decree of the probate court establishing a certain written instrument as the last will and testament of Orzella C. Bean.   In county court trial by jury was had, and the verdict and jugdment allowed and established the will.   The contestants excepted.

The will was executed August 26, 1909.   The testatrix was then past seventy years of age and was a widow, her husband having been dead about a year.   By her will she gave five dollars to each of her five children, namely, her four sons Hiram, Charles, Everett, Herbert, and her daughter Kate, the wife of Lee Lane.   The residue of her estate she gave to her son Charles, the proponent of the will, which names him as executor.   The sons Everett and Herbert and the daughter, Mrs. Lane, are the contestants.   In county court the will was contested on the grounds of lack of mental capacity on the part of the testatrix and of undue influence exerted upon her by the proponent, Charles Bean.   It appeared that the estate was worth about two thousand nine hundred dollars.

The proponent, Charles, was a witness, and in direct examination testified to the effect that he never influenced his mother to make the will in question.   In cross-examination he was asked various questions about his talks with his mother.   Some of them he answered by saying "No" or "No Sir," and some of them by saying "Not to my knowledge."   He was asked if he ever told his mother that she could give the other children one dollar each and that then the will could not be broken. He replied "Not to my knowledge."   Examining counsel then said:   "That wasn't a great while ago.   You know whether you did or didn't?"   The witness replied:   "I say not to my knowledge, sir."   Counsel then said:   "You mean to say that you didn't say that to your mother when you say 'not to my knowledge'"?   This question was objected to and was excluded. The meaning of what he had said was clear enough, and required no explanation.   Counsel for the contestants say that the answer was evasive, since he could not have told his mother what was implied in the question without his knowledge.   But the witness was referring to the knowledge or recollection which he had

on the witness stand. There is no occasion to ask a witness what he means by an answer when his answer is susceptible of but one meaning. There was no error in the exclusion of the question.

The proponent testified that he had corresponded with his parents for the "last" ten years. In cross-examination he was asked "Did you write this, 'I want you to have these things fixed up as soon as you can so there will be no fighting. All you will have to do is to will them all one dollar and they can't break the will.' Did you write that?" There was nothing in the question to indicate whether the inquiry related to a letter written to the testatrix or to her husband. Presumably, however, the question related to a letter written to the one or the other of his parents. The question was excluded and an exception was taken. The contestants claim that the question was admissible on the ground that, if the proponent had written the passage asked about, that fact tended to contradict the direct testimony of the witness. But it would not so tend unless the words were written to his mother. Error does not affirmatively appear.

At a later stage of the trial the contestants introduced in evidence certain letters written by the proponent. Two of them were written to the testatrix, and one of them was written to her husband, the father of the proponent. In one of the letters, dated about four years before the death of the husband of the testatrix, but addressed to her, the proponent said: "There is one thing I want you to do, that is to have things fixed as soon as you can so there will be no fighting. All you will have to do is to will them all one dollar and they cannot break the will." Doubtless this is the letter about which the contestants had inquired as above stated. It was received in evidence, and so although the inquiry was not so framed as to entitle the contestants to an answer, they got the benefit of the matter they were trying to bring out.

The proponent called one Fiske, a clergyman, who, after testifying to seeing and observing the testatrix, testified as to her without objection thus: "Why I never saw anything that led me to feel that she did not understand what was going on." In cross-examination Mr. Fiske testified that Mrs. Bean's hus-

band was, as he supposed, afflicted with cancer in his last sickness, cancer on the lip and in the mouth; that the cancer was disagreeable to the sight and to the smell; that his look was pitiable and distressing; that the situation was, perhaps aggravated by the disinfectants that were used, that every time the witness was there he saw Mrs. Bean caring for her husband; that she seemed at times very weak physically; that she made no conversation; that her complexion was bad; that the witness thought she was enduring a good deal; that it seemed as though she would break down; that it seemed as though she was enduring enough to make him or his family break down.  He was then asked this question:  "Now considering, Mr. Fiske, the strain that she had been through, considering all that you saw of her, considering the care that she had had of Mr. Bean in the condition that he was, considering that she was in a condition about to break down—such as to lead you to think that she would break down, or your family would under a similar strain, would you want to say she was of sound and disposing mind?"  The court did not permit this question to be answered, and the contestants excepted.  The question did not confine the witness to an opinion based upon the things he had testified to nor even to an opinion based solely upon the things observed by him. The question was not made admissible by the direct examination, for the witness had not testified that she was of sound and disposing mind, and besides it was not for the witness to say whether she was of a "disposing" mind, since to say that would be to give  an opinion as to her testamentary capacity.  There were various reasons why the course taken  by the court was proper.  *Town of Londonderry* v. *Fryor*, 84 Vt. 298; 79 Atl. 46; *In re Estabrook's Will*, 83 Vt. 229, 75 Atl. 1; *Chickering* v. *Brooks*, 61 Vt. 554, 18 Atl. 144; *In re Blood's Will*, 62 Vt. 359, 19 Atl. 770; *Fairchild* v. *Bascomb*, 35 Vt. 398.

Various witnesses had testified and properly, about the mental condition of the testatrix; and two of the attesting witnesses to the will, R. M. Harvey and E. M. Harvey, Esquires, had given their opinion that at the time of the execution of the will the testatrix was of a sound and disposing memory.  This testimony was not objected to  and did not, as the contestants seem to suggest, entitle them, on the cross-examination of Mr.

Fiske, to take his opinion as to whether or not the testatrix was of a disposing mind.

The proponent's testimony tended to show that his father and mother had been opposed to the marriage of his sister, Kate, to Lee Lane, and that the parents ever after the marriage had hard feelings toward both her and her husband.

The proponent's evidence tended to show that Lee Lane had abused his wife and that she had left him twice.

Mrs. Lane, who is one of the contestants, took the witness stand and in cross-examination by the proponent's counsel, was examined as to whether she complained to her father and mother about her husband. She said that she hardly thought she said much about him, that the separation was the result of a misunderstanding, that she, perhaps, complained somewhat to her father and mother about her husband because he thought as he did. In redirect examination she was asked by her counsel if the separation was by reason of anything Mr. Lane did, and if the cause of the separation was anything that some third party outside the family did. The offers in connection with these questions were to show that the separation was not by reason of anything that Mr. Lane did and that the separation was "because of something that some third party outside the family did." The questions were excluded under the offer and the contestants excepted. There was, however, no error in excluding the testimony. The cross-examination as to the abuse of Kate by her husband was relevant only as it was connected with testimony tending to show knowledge of the situation brought home to the testatrix; and the offers accompanying the questions in redirect examination did not tend to show that, if the cause of separation was the conduct of a third party, that fact was brought home to the knowledge of the testatrix; or that any statement that such was the fact was ever made to the testatrix. The offers lacked a very essential element. *In re Estabrook's Will*, 83 Vt. 229, 241, 75 Atl. 1; *Foster's Exrs. v. Dickinson*, 64 Vt. 233, 250, 24 Atl. 253.

In direct examination Mrs. Lane was asked: "What have you ever noticed your brother Charles do in respect to your mother?" The witness answered: "Well, he wanted she should do as he said, and had a great influence over her."

Objection being made this testimony was excluded and the contestants excepted. The answer was not responsive; and was not proper evidence, since undue influence cannot be shown by opinions divorced from facts, and great influence of a son with a parent may as well be proper as undue. *Slack* v. *Bragg*, 83 Vt. 404, 76 Atl. 148; *Fowlie* v. *McDonald etc. Co.*, 82 Vt. 230, 72 Atl. 989; *Crahan* v. *Chittenden*, 82 Vt. 410, 74 Atl. 86; *Cate* v. *Fife*, 80 Vt. 404, 68 Atl. 1.

One Badger was a witness in behalf of the contestants. In rebuttal the proponent contradicted Badger and was asked if the latter was any relative of the wife of the contestant, Herbert Bean. He said: "They tell me he is." Neither the question nor the answer was objected to. Subject to objection and exception he was then asked: "From whom did you get the information?" He said: "Herbert Bean's wife." Hearsay evidence of relationship between Badger and the wife of one of the contestants having got into the case without objection, and no request being made that it be struck out, the contestants were not harmed by having the witness who had given the testimony give the source of his information, for they were thereby given opportunity to refute it. *Ware* v. *Childs*, 82 Vt. 359, 73 Atl. 994.

The exceptions state that proponent's evidence tended to show that after the funeral of Mrs. Bean's husband, the daughter, Mrs. Lane, did not visit her mother, the testatrix, until the latter, at the time of her death, became unconscious, although much of the time the testatrix lived alone and within a few miles of the home of her daughter. The exceptions also state that, with reference to Mrs. Lane's estimonial reasons for not visiting her mother, certain diaries were used as having a tendency to show that, although the daughter did not visit her mother, the former was in good health and was many times away from her own home. It appears from the exceptions that these diaries belonged to Mr. Lane, and that on one day of trial, in testifying in behalf of the contestants, he used one of the diaries; that the proponent's counsel then asked him to produce his diaries for 1909 and 1910; that the witness replied that he couldn't say whether or not he kept one for 1909, that there was one year— one or two years—that he didn't keep a diary; that if he was

at home he could tell about it, and that the proponent's counsel then asked him to look and to produce the diary for 1909, if he had one, and also that for 1910. It appears that the next day he produced his diary for 1910, saying that he had none for 1909, and that proponent's counsel used the 1910 diary in cross-examining the witness. In argument counsel for the proponent, referring to Mr. Lane said: "If he had thought, he would have brought the diary of 1909 with him too." Counsel for the contestants excepted to this remark, whereupon the proponent's counsel said to the jury: "That is only even sparing fair argument, and is to be deduced from his actions right on the stand, when he fired it up so quickly and smartly with 'that isn't the year mother died.' Well it turned out it was." No exception was taken to this latter remark of counsel, and no claim made, so far as the case shows, that it wasn't accurate. The exceptions say that there was nothing beyond what has been stated and the appearance of the witness in giving his testimony to support the argument.

The appearance of a witness on the stand may often be proper matter of comment. *State* v. *Rivers*, 84 Vt. 158, 78 Atl. 786. But it is quite true that no substantive evidence is got by putting a witness on the stand and letting the jury look at him, unless there is something in the case that makes him proper as an exhibit.

But it appears from what is stated in the bill of exceptions that the testimony tended to show the keeping by Lane of diaries for a series of years, and that when he first testified about the diaries he wouldn't undertake to say that he didn't keep a diary for 1909. This testimony was given at the Spring Term of 1911, not more than a year and half after the close of 1909. As the exceptions read, his testimony about this matter, on the second day above referred to, was not that he didn't "keep" a diary in 1909, but that he "had" none for that year, which would be true if he had kept one and had destroyed it. This may be a merely verbal criticism. But the whole situation was before the county court. Whether or not the court said or did anything except to allow the exception does not appear. No error can be predicated upon this incident.

The contestants presented sixteen requests to charge.

What eight of them were we have no means of knowing, for not only are they not relied on in the contestants' brief, but they are not even made a part of the exceptions either directly or by reference. The contestants excepted "to the refusal of the court to comply with each and every request requested by the contestants" and to the charge of the court as given "in respect to each and every request requested by the contestants." These exceptions were not a compliance with §2, of Rule 28, of the county court, which requires that the points relied on shall be presented to the trial court before the jury retires, a rule consistent with immemorial practice and supported by reasons of justice which it is not necessary to mention, for they are obvious and cannot be gainsaid.

In consequence of a holding in another case, disposed of just as this case was to be argued, counsel for the contestants herein asked for, and was given, permission to prepare and file a supplemental brief upon the subject just above discussed. Such a brief was filed and we have given careful consideration to it and to all the cases therein cited, and have made reference to the exceptions and briefs on file in some of the cases, since the contestant's brief invites such reference.

In *Emack* v. *Hughes*, 74 Vt. 382, 52 Atl. 1061, the defendant excepted to the failure of the court to comply with three special requests. The presiding Judge stated in the bill of exceptions that he did not charge as requested; and each of the requests was separately considered in this Court.

In *Kilpatrick* v. *Grand Trunk Ry. Co.*, 74 Vt. 288, 52 Atl. 531, 93 Am. St. Rep. 887, the defendant presented eleven requests for instructions to the jury, and excepted to the non-compliance of the court with each. The presiding Judge stated in the bill of exceptions that he did not comply with them nor with any of them; and this Court briefly considered all the requests.

In *Terrill* v. *Tillitson*, 75 Vt. 193, 54 Atl. 187, the plaintiff excepted to the refusal of the court to comply with six requests presented by him. The presiding judge stated in the bill of exceptions that he refused to charge as requested, and this Court considered the exceptions to his refusal.

In *Morrisette* v. *Canadian Pacific Ry. Co.*, 76 Vt. 267, 56 Atl. 1102, the defendant presented eighteen requests to charge

and excepted to the refusal of the court to comply with all except the thirteenth request and the fifteenth. In this case, which arose out of a railroad accident in Canada, an important question was whether the substantive law which governed was that of the Province or that of Vermont. Nearly all of the requests asked for a charge based on the claimed law of Vermont, and the presiding judge, the writer of this opinion, refused to consider such requests on the ground that the law of the Province and not that of Vermont governed, and stated his refusal and the ground of t in the bill of exceptions. This refusal disposed of all but two of the requests. It touched a question which ran all through the trial, and this Court, having considered it, briefly noticed the two questions raised by the requests, which remained for consideration.

In *McKinstry* v. *Collins*, 76 Vt. 221, 56 Atl. 985, the defendant asked for seventeen instructions. The presiding Judge did not state whether or not he complied with them or any of them, and an exception was taken in these words: "Where the court has not complied with each and every request of the defendant, save the question." In this case, notwithstanding the silence of the bill of exceptions as to whether or not any of the requests were complied with, and notwithstanding the qualified character of the exception taken, the court examined the charge and determined that two of the requests should have been complied with and were not. The course taken in this case has not been followed where the real situation has been noticed by the Court.

In *Luce* v. *Hassam*, 76 Vt. 450, 58 Atl. 725, decided a few months after the decision in the case last referred to, the defendant presented twelve requests to charge and excepted to the failure of the court to charge as requested, so far as there was such failure, and to the charge as given.

By this time it had become apparent that a practice was growing up utterly at variance with the long established rule that the trial court is entitled to know, before the jury retires, the precise claims which an exceptor makes with respect to claimed faults in the charge in consequence either of what has been said or of what has been left unsaid. The exception to the charge as given was briefly disposed of. The exception

"to the failure of the court to charge as requested, so far as there was such failure," was treated separately, and it will be seen that it was substantially like the qualified exception taken and considered in the McKinstry case just referred to. With respect to this exception the court held that by it the defendant, in effect, said to the court, "if you have not complied with my requests I except." It was held that no omission to charge was so pointed out that the court would consider it, and that a general exception to the refusal of the court to charge as requested will not be considered when "the requests are numerous and some are fully complied with, while others are in part, or are disregarded." It is significant of an understanding of the trend of practice that Judge Start, who wrote the opinion in the McKinstry case, also wrote the opinion in *Luce* v. *Hassam.*

In *White* v. *Lumiere etc. Co.*, 79 Vt. 206, 64 Atl. 1121, 6 L. R. A. (N. S.) 807, the defendant excepted in the general language of *Luce* v. *Hassam*, 76 Vt. 450, 58 Atl. 725, save that the exception to the charge as given was now limited to the charge upon the points of the several requests. The court treated the qualified exception to the failure to charge as requested and the exception to the charge as given upon the points of the several requests as two exceptions and held that neither was available.

The two cases last referred to were followed in *Drouin* v. *Wilson*, 80 Vt. 335, 67 Atl. 825, 13 Ann. Cas. 93, and in *Ide* v. *Boston & Maine R. Co.*, 83 Vt. 66, 82, 74 Atl. 901, where the exception to the refusal of the court to comply with numerous requests was of the same qualified character; and in principle they were followed in *Johnson* v. *C. V. Ry. Co.*, 84 Vt. 490, 79 Atl. 1095, where the plaintiff presented numerous requests and the defendant excepted "to the compliance by the court with the requests of the plaintiff—such as were complied with."

In the meantime, a new formula for a general exception had been presented. As a description of attached real estate as all the real estate which a defendant owns in a given town has been held to be too uncertain, while a description of attached real estate as all the real estate in a given town has been held to be certain enough to hold the real estate of the defendant within the town, so, it appears to have been reasoned, if a list

of requests is presented and a general exception taken to the refusal of the court to comply with them without qualifying words, irrespective of their number and character, irrespective of whether the court has complied with a part, or with some of the requests in part, the exception may avail to bring under review all of the requests, and to require this Court, by analyzing the charge with reference to each request, to determine whether there was some request which should have been complied with and was not.

Such an exception was taken in *Mahoney's Admr.* v. *Rutland R. Co.*, 81 Vt. 210, 69 Atl. 652, where there were twelve requests, and a general exception to the court's failure to comply with them. In this Court the claim was that there was error in not complying with four. The exception was held to be too general to reserve any question. So in *Davis' Admrx.* v. *Rutland R. Co.*, 82 Vt. 24, 71 Atl. 724, where ten requests were presented and an unqualified exception was taken to the refusal of the court to charge as requested, the exception was held to be too general.

In *Duggan* v. *Heaphy*, 85 Vt. 515, 82 Atl., 734 decided at the term at which the case under consideration was argued, a somewhat new formula for taking a general exception was used. There the defendant presented twenty-five requests to charge and excepted to the refusal of the court to charge according to "each and every request" of the defendant, and also excepted to the charge of the court as given in respect to "each and every request." In his brief in that case the defendant claimed that some twelve or thirteen of the requests should have been complied with, but made no claim under his exception to the charge of the court as given in respect to the subject-matter of each and every request. This Court said of the requests that some of them could not have been properly complied with, that some were complied with, that they related to every question that could readily be thought of in connection with the case; and held that the exception to the refusal of the court to charge according to each and every request of the defendant was of no avail.

The formula of the general exceptions taken in the case at bar is the same, except for a slight and immaterial change of phraseology, as that used in the Duggan case.

· But the contestant's counsel claim that the holding in the Duggan case was a departure from the former practice and should not be followed, and this contention is based upon the use of the words "each and every" in the taking of the exception relating to the requests. But it is idle to argue that an exception in this form enlightens the trial court any more than an exception to the refusal of the court to charge as requested, or any more than an exception to the refusal of the court to comply with a list of requests so far as they have not been complied with.

As it is not fair treatment of a witness to assume that he has said something which he has not, so it is not fair to the trial court to assume that it has refused to comply with each and every one of a long list of requests when there is, in fact, no claim that it has so refused or that it ought to have complied with each and every request. Exceptions are not like pleadings, in which, often, certainty is more important than truth.

After the close of a charge the conference between the lawyer at the bar and the lawyer on the bench, as to claimed errors in the charge, ought to be frank and unreserved to the end that the presiding judge may correct or amplify the charge as upon reflection he may desire to, and that no questions may be brought to this Court except those upon which the county court has had a fair opportunity to pass judgment. The exceptions which we have referred to might well be denominated exceptions in the "common counts." They say to the court "you have erred," and say no more.

In most of the cases already referred to there were particular requests so brought to the attention of the court that exceptions to non-compliance with them were held to be available. The practice of the Court since *Luce* v. *Hassam*, 76 Vt. 450, is not an innovation, but has been taken to meet an innovation, as every one familiar with our reports must see. And the practice is not attended with hardship.

In *Kiley* v. *Rutland R. Co.*, 80 Vt. 536, 68 Atl. 713, 13 Ann. Cas. 269, the defendant excepted to the failure of the court to comply with seven requests, and also excepted to the charge upon the subject-matter of those requests. It seemed clear that the requests were fairly brought to the attention of the court, and they were considered. The exception to the charge upon

the subject-matter of the requests was held to be altogether too vague and general to reserve any question for review.

In *Williams* v. *Norton Bros.*, 81 Vt. 1, 69 Atl. 146, the defendants excepted to the refusal of the court to charge in accordance with its requests, to the charge as given upon the subject of the requests, and to certain portions of the charge set out in the exceptions. Here the exception relative to the requests was held to be too general, but it appearing from the record that the attention of the trial court was called directly to the propositions in the charge that were set out and complained of, it was held that the exceptions noted thereto were available.

In *Coolidge* v. *Taylor*, 85 Vt. 39, 80 Atl. 1038, the defendant submitted requests to charge, at least sixteen in number, for one of them is numbered sixteen, but he did not take a general exception, but called the attention of the trial court to five, two of which were practically one, and excepted to the refusal of the court to charge as requested in those, and to the charge as given in respect to the matters involved in them. This Court considered the four or five requests, singled out of many and specifically called to the attention of the trial court and excepted to, but considered that the exception to the charge as given in respect to the matters involved in each of those requests was too general for consideration.

In *Lang* v. *Clark*, 85 Vt. 222, 81 Atl. 625, the defendant made six requests to charge. Two of them were complied with to the satisfaction of the defendant as he informed the trial court. The other four were urged upon the attention of the trial court, and an exception was taken to the failure of the court to comply with them. These this Court considered.

The defendant in his supplemental brief makes special mention of the case of *Jenness* v. *Simpson*, 84 Vt. 131, 78 Atl. 886, as showing the practice of the Court.

There the defendant presented sixteen requests and excepted to the neglect and refusal of the court to charge, "as requested in each request severally as to each request." The peculiar formula used in the exception is of no consequence, as we have seen. In his brief, the defendant discussed only seven of these requests, and claimed nothing as to the rest and so waived his exception as to each of them. Nevertheless this

Court considered them all, though after treating of twelve requests, five of which were not relied on by the defendant, it was simply said of the remaining four, "the other requests were all sufficiently complied with." It is enough to say that this Court, in considering requests about which no claim was made by the exceptor, indicated clearly enough that it inadvertently failed to observe just how the matter of the requests and the exceptions to the failure to comply with them stood here. This case cannot be considered as a precedent upon the question under consideration, but it forcibly illustrates how necessary it is that a trial judge, compelled to act with little time for reflection, should be aided rather than hindered by requests and exceptions in relation to them.

The contestants call attention to the opinion in the case of *Fife & Child* v. *Cate*, 85 Vt. 418, 77 Atl. 947, an opinion which gave consideration to each of a series of requests which the defendant by exceptions and in argument claimed had not been complied with. But this was a chancery case, and the requests related to findings of fact by the chancellor; they were requests that certain evidence be reported, that there be a report of subordinate facts on which ultimate findings were based, that the measure of proof required by the chancellor be reported, and so on. We decline to be drawn into a consideration here of chancery practice in these and like matters. The requests in this chancery case have no relation to the matter of requests to charge in a jury trial, where the facts are to be found by the jury under proper instructions from the court as to the law applicable to the case.

We have referred to all, and more than all, of the cases cited by the defendant upon the point of practice raised. In general, where the Court has declined to consider exceptions to a charge or to a failure to charge or to comply with requests it has done so of its own motion; but here the plaintiff in his brief challenges the availability of the exception to the refusal to comply with the requests, and the defendant has prepared a special brief in in support of the exception; and the time has seemed opportune for the discussion which has been had. In this State the trial court, whether requested or not, is bound to instruct the jury as to the law which governs a case, and an exception lies as

well to an omission to charge, as to an erroneous statement of the law.  Yet while this is so, requests may often be so framed as to aid counsel in securing the rights of their clients and to aid the court in the discharge of its duty; but where requests are so drawn and exceptions so taken as to conceal rather than to reveal the real claims which counsel intend to make in this Court fairness and justice require that the requests be disregarded.

The contestants took two specific exceptions to the charge, but neither of these is relied on or mentioned in their brief, therefore, they are not here considered.

*Judgment affirmed and ordered to be certified to the probate court.*